TERRITORY OF DAKOTA, Defendant in Error, *v.* MAURICE O'HARE, Plaintiff in Error.

### 1. Criminal Procedure — Calling Jury.

In a criminal case, where the jury was called and sworn singly, and without calling twelve jurors into the box, and where the parties were required to exhaust all challenges to individual jurors as each juror appeared, and before proceeding further with the call, *held* not error.

### 2. Same; Calling From List — Error; Waivable, How.

Where the clerk of the district court, in calling names for a trial jury, did not obtain the names from any jury-box, and did not use either a jury-box or ballots in calling the jury, but called off the names of those who served as jurors from a list of names before him, *held*, it was error. *Held, further*, that, had the attention of the trial court been called to such irregularity before the trial began, it would have been its imperative duty to have promptly dismissed from the trial panel all jurors who were so drawn. But where, in a criminal case, such irregularities of the clerk were discovered by the defendant's counsel while they were going on, and before the trial began, but he made no objection based on such irregularities, but, on the contrary, kept silent as to the same until after a verdict was returned into court, *held*, that the irregularity was waived. *Held, further*, that such irregularity was of a character which might be waived without impairing defendant's right of trial by jury. *Held, further*, that it was too late to take advantage of such irregularity upon a motion for a new trial, where defendant's attorney had such previous knowledge of the irregularity, but reserved his knowledge thereof, and brings it before the court for the first time, and by affidavit, upon a motion for a new trial.

### 3. Same; Overruling Challenge for Cause When Peremptory Challenges Unexhausted Not Reversible Error.

Where it is conceded that defendant's challenge of a juror for cause in a criminal case was improperly overruled, but it did not appear affirmatively from the record that, at the time the jury was completed and accepted, defendant has exhausted his peremptory challenges, *held*, that defendant was not in a position to take advantage of such erroneous ruling. In such case, the court will assume that the juror, if objec-

tionable to defendant, could have been gotten rid of by a peremptory challenge.

**4. Introduction of Handwriting Solely for Comparison Not Admissible in Territorial Courts.**

Where letters purporting to have been written by the defendant were offered in evidence by defendant for the sole purpose of comparison of the handwriting with disputed writings put in evidence by the territory, and which letters were excluded, *held*, not error. Writings not in evidence for other purposes cannot be compared with disputed writings, under the common-law rule adopted by the supreme court of the United States. The trial court, in making such ruling, was a territorial court of subordinate jurisdiction, and, as such, was bound by the federal precedents. Should the same question arise in a case commenced after this state was admitted into the Union, we shall feel at liberty to establish a more liberal rule, if we shall then deem it expedient so to do.

**5. Handwriting — Expert Testimony.**

The testimony of an expert in handwriting was excluded by the trial court. The expert testified that he was acquainted with defendant's handwriting, but, being examined by the court, he testified that he had seen defendant write but once, and that was during the noon recess of the court, at which time he had, at the request of the defendant's counsel, seen defendant write, for the sole purpose of becoming a witness. *Held*, not error.

**6. Criminal Procedure — Cross-Examination of Defendant.**

Where, in a criminal case, defendant, at his own request, had taken the stand as a witness in his own behalf, and, on cross-examination, was required to testify as to his antecedents, and, in so doing, stated that he had passed under names other than his own, and had been in jail at different times and places, such testimony being objected to as irrelevant, and not proper cross-examination—no question of privilege having been presented, *held*, not error. A defendant, under such circumstances, occupies no better position than any other witness; hence, within the bounds of a sound judicial discretion, may be cross-examined as to specific collateral facts for the sole purpose of affecting his credibility. This is the rule as established by a decided preponderance of authority; but a different rule prevails in certain states, as in Oregon, California, and Missouri, where statutes have restricted the right of cross-examination to matters drawn out in chief.

**7. Same; Charging Jury as to Evidence.**

Where the trial court, in a criminal case, in delivering its charge to the jury, makes an argumentative comparison upon the relative credibility of the principal witness for the defense, and the principal witness for the prosecution, where their testimony is vital, and diametri-

cally in conflict, and in so doing disparages the credibility of such wit.
ness for the defense, and also conveys to the jury in plain, though in.
direct, terms, that the court entertains strong suspicions of the credi.
bility of such witness for the defense, *held*, error which must reverse
the judgment.   *Held, further*, that such error is not cured by re-
peated statements in the charge that the jury are the exclusive judges
of the weight of evidence, and the credibility of witnesses.   Sub-
division 6, § 343, Code Crim. Proc., which declares that, in charg-
ing the jury in criminal. trials, the judge "may state the testimony,
*     *     * but must not charge the jury in respect to matters of
fact," has, as to criminal trials, abrogated the common-law rule, under
which judges were permitted to give juries their own views and opin-
ions upon the weight of the evidence and the credibility of the wit-
nesses.

(Opinion Filed April 1, 1890.)

*ERROR* to district court, Traill county; Hon. WILLIAM. B.
McCONNELL, Judge.

Taylor Crum, for the plaintiff in error, argued:   Twelve
names must be drawn by the clerk, and defendant allowed
to examine the twelve before exercising the right of peremptory
challenge; citing People v. Scoggins, 37 Cal. 676;  People v.
Iams, 57 Cal. 115;  Lamb v. State, 36 Wis. 424.   A writing
known to be in the handwriting of a party may be introduced
for the purpose of comparison.   Georgia, etc., Co. v. Gibson, 52
Georgia, 640;  Chance v. Ry. Co., 32 Ind. 472;  Macomber v.
Scott, 10 Kan. 336;  Page v. Homans, 14 Me. 478;  Sweetser v.
Lowell, 33 Me. 446;  Vinton v. Peck, 14 Mich. 295;  Yates v.
Yates, 76 N. C. 143;  Murphy v. Hagerman, Wright, 293, (Ohio);
McCorkle v. Binns, 5 Binn. 340, (Pa.);  State v. Hopkins, 50 Vt.
316;  Bird v. Miller, 1 McMull. 120, (S. C.)   The courts are di-
vided on this proposition.   Unless defendant puts his character
in issue, the state cannot inquire into his history, nor attack
his character.   State v. LePage, 24 Am. Rep. 75;  People v.
Daniels, 11 Pac. Rep. 655;  Coleman v. People, 55 N. Y. 89;
Gale v. People, 26 Mich. 159;  State v. Huff, 11 Nev. 26;  State
v. Lurch, 6 Pac. Rep. 410;  State v. Porter, 75 Mo. 171;  State v.
Carson, 66 Me. 116;  State v. Rainsburger, 31 N. W. 866;  Phil-
adelphia, etc., Ry. Co. v. Stimson, 14 Peters, 448.

As to the fifteenth exception to the charge, stated in the
opinion, counsel cited:   Thorp v. Goewey, 85 Ill. 612;  Evans v.

George, 80 Ill. 51; Frame v. Badger, 79 Ill. 441; Bulen v. Granger, 29 N. W. 719; Unruh v. State, 4 N. E. 453.

*Geo. F. Goodwin,* attorney general, and *F. W. Ames,* states attorney for Traill county for the defendant in error: The objection to want of box and ballots was waived because not made till jury was complete. People v. Stonecifer, 6 Cal. 405; Thrall v. Smiley, 9 id. 537; People v. Ransom, 7 Wend. 417; Com. v. Norfolk, 5 Mass. 435. Jurors in criminal cases should be separately accepted and sworn: Thompson on Trials, §§ 91–2; State v. Potter, 18 Conn. 166; State v. Pierce, 8 Iowa, 231; Com. v. Rogers, 7 Met. 500; Walker v. Collier, 37 Ill. 362; State v. Roderigas, 7 Nev. 328; Horbach v. State, 43 Texas, 242; Smith v. Brown, 8 Kan. 608; Schufflin v. State, 20 Ohio St. 233; State v. Brown, 12 Minn. 538. An erroneous overruling of challenge for cause is not reversible error unless defendant had exhausted his peremptory challenges. Anarchist Case, 12 N. E. 989; Loggins v. State, 12 Tex. App. 65; People v. McGungill, 41 Cal. 429; State v. Elliott, 45 Iowa, 486; People v. Teatrusky, 2 N. Y. Crim. Rep. 450; Territory v. Campbell, 22 Pac. 121. That defendant was properly cross-examined as to his history and character: State v. Cox, 67 Mo. 392; Southworth v. Bennett, 58 N. Y. 659; State v. Pfefferle, 12 Pac. 406; Anarchists' Case, 12 N. E. 989; Boyle v. State, 5 id. 203; People v. Cummins, 11 N. W. 184; Territory v. Davis, 10 Pac. 359; Hanson v. Com., 11 S. W. 286; People v. Johnson, 50 Cal. 571. The extent of such cross-examination is in the discretion of the trial court: Disque v. State, 8 Atl. 281; People v. Clark, 8 N. E. 38; State v. Pfefferle, *supra.* Specimens of chirography are not admissible in evidence merely for purposes of comparison: Strother v. Lucas, 6 Peters 763; 9 Am. & Eng. Encyc. Law, 283–290. Unsigned letters are admissible, if traceable to the writer; Bartlett v. Mayo, 33 Me. 518. As to the fifteenth exception to the charge, they cited: Thompson on Charging Jury, § 37; People v. Cronin, 34 Cal. 191.

In opening the state's case, its attorney spoke as follows: "This is the third time that the grand jurors of this county have returned an indictment for the crime of murder. In

the former cases, the victim, the accused, the witnesses, and all connected with the trial, were residents here, and well known to the people of the county; in this case, the defendant, and most of the witnesses, and the deceased, are strangers to us all. Yet this investigation is of as much moment, to the people of this county, as though this crime were directed against one of our own citizens." To these remarks the defendant's counsel excepted.

To the point that such remarks were improper, counsel for plaintiff in error cited: State v. Williams, 18 N. W. 682; Cleveland Paper Co. v. Bangs, 16 N. W. 833; Brown v. Swineford, 28 Am. Rep. 582; McDonald v. People, 18 N. E. 817; Hall v. Wolf, 16 N. W. 710; People v. Montague, 39 id. 588; Sasse v. State, 32 id. 849. Counsel for the state, contra, cited: Thompson on Trials, §§ 964, 977; Heyl v. State, 109 Ind. 589; People v. Gibbs, 38 N. W. 257; Boldt v. State, 35 id. 935; State v. Calhoun, 34 id. 194; State v. Winter, 34 id. 476; People v. Greenwall, 22 N. E. 180; Anarchists' Case, 12 id. 993.

WALLIN, J. The defendant (plaintiff in error) was convicted of the crime of murdering one Casey, and is now incarcerated at Bismarck under sentence of imprisonment for life. On April 24, 1889, motions for a new trial and in arrest of judgment were overruled by the district court. A bill of exceptions, embracing the evidence and the proceedings had at the trial, was settled in the court below; and the whole record is now before this court for review.

The errors assigned are numerous, and we will first consider those which relate to the formation of the trial jury. The mode of impaneling the jury was the following: Names were called by the clerk; and, as jurors appeared, one at a time, they were sworn individually to try the case, and without calling twelve men into the jury-box. After the panel had been completed, it was sworn collectively, by administering the same form of oath as that which had previously been administered to the jurors individually. We find no warrant in the statute governing criminal trials for swearing the jury collectively, but no exception appears to have been taken to the second swearing of the jury, and we are unable to see how such an irregularity did or could preju-

dice the defendant. After the jury had been called and sworn individually as jurors, but before the oath had been administered to the panel as a body, objection was made by defendant's counsel "to the manner of selecting the jury." It appears that the trial court considered it very important that the specific ground of this objection should distinctly appear; and, accordingly, in settling the bill of exceptions, the trial court not only stated the ground of the objection, with the ruling thereon, and the exception allowed thereto, but superadded an explanation which serves the double purpose of showing affirmatively what the ground of the objection was, and also excluding negatively all other grounds. The following is the record: "When the jurors were called and sworn individually, there was no objection made or exception taken to the manner of impaneling them until after the jury was completed, and the jurors had been sworn, individually, to try the case, when the defendant excepted to the manner of selecting the jury. Afterwards the court ordered the jury to be sworn as a panel, in the same manner as though it was administered to them as individual jurors." To which record the court appended the following: "When the defendant excepted to the manner of selecting the jury, as stated and referred to in the foregoing remarks of the court, it was to the fact of the jurors being called and sworn singly by the court; and to this fact an exception was allowed, as indicated in the remarks of the court." Conceding, without deciding the point, that this objection had not been constructively waived by the fact that the defendant's counsel had remained silent, and allowed the process of impaneling the jury, one at a time, to go forward to completion without objection, we will consider the objection upon its merits. The subject of challenging jurors is wholly a matter of statutory regulation. In criminal cases, it is provided that "before a juror is called the defendant must be informed by the court, or under its direction, that, if he intends to challenge an individual juror, he must do so when the juror appears, and before he is sworn." Also, that "a challenge to an individual juror is either (1) peremptory; or (2) for cause." "It must be taken when the juror appears and before he is sworn." Code Crim. Proc. §§ 322–324. It is quite clear to us that these

sections of the Code, with others of similar import in the context, which we need not cite, expressly require that all challenges to individual jurors, whether peremptory or for cause, must be taken when the individual juror appears, and before he is sworn as a juror. The language of the statute is identical with the provisions of a statute of the state of Minnesota, under which the supreme court of that state holds that "all challenges by either party to an individual juror, whether for cause or peremptory, should be interposed and determined when he is called, and in the prescribed order, before proceeding further in the call." State v. Armington, 25 Minn. 29; State v. Brown, 12 Minn. 538, (Gil. 448.) People v. Scoggins, 37 Cal. 676, is cited as authority for the proposition that twelve men must be called into a jury-box before a defendant in a criminal cause can be called upon to exercise his right of challenge. The case is instructive, and we can and do adopt much of its reasoning as applicable to our own criminal code; but the case is not in point as supporting the construction contended for by defendant's counsel. In California, there is a section of the statute relating to civil actions which expressly requires the clerk to "draw from the box twelve names," etc. § 159, civil practice act. In deciding the case above cited, the California court attempted to harmonize the civil and criminal statutes of that state relating to the formation of trial juries, and the decision turns upon the construction given by the court to the clause of the statute which expressly requires the clerk to "draw from the box twelve names." The statutes of the territory of Dakota did not contain this special statutory provision. § 243, Code Civil Proc., it must be conceded, is somewhat ambiguous in this: that it apparently recognizes two modes of impaneling a jury for the trial of civil actions. It seems to contemplate that in some cases the right of peremptory challenge will not be exercised until the trial panel is full; and, by clear inference from the language, there are other cases contemplated when that right may be exercised before the panel is completed. We are not called upon in this case to harmonize these ambiguous provisions of the Civil Code with the statute regulating the formation of trial juries in criminal actions, nor shall we attempt to do so. The provisions of

the Criminal Code are too clear for doubt. We therefore hold that the district court did not err in swearing each juror individually, as he appeared, and before proceeding further with the call.

Another assignment of error is as follows: "The court erred in allowing the clerk to call the names of the jury-men without any box or ballots, either as provided by law or otherwise." But for the affidavit of Taylor Crum, Esq., defendant's counsel, hereinafter set out in full, this assignment of error would be summarily disposed of, by stating the fact that the record in this case contains no evidence whatever that any objection was made, ruling had, or exception taken during the trial, or at any time, based upon any alleged irregularity of the clerk in calling names of jurors from a list of names before him not drawn from the jury-box. The bill of exceptions was settled long after the motions for a new trial and in arrest of judgment were made and overruled. The affidavit of counsel referred to was incorporated with the bill and is now before us. It made its first appearance in the case, and was filed with the clerk, on the day the motion for a new trial was determined, which was some six days after the verdict was returned into court. It is manifest that the very particular language used by the learned judge who presided at the trial, and subsequently settled the bill of exceptions—which language we have already quoted from the record—was employed with the intention and purpose of placing upon the record an authoritative negative of the plain inference to be drawn from the language of the affidavit, viz., the inference that defendant's said counsel did, upon discovering the irregularities of the clerk in drawing the jury as detailed in the affidavit, proceed to make an objection to the court, and based it upon the irregularities specified in the affidavit. In view of the conflict of matters of fact between the plain inference to be drawn from the averments in the affidavit and the record of the proceedings had at the trial as settled by the court below, we cannot, as a court of review, do otherwise than assume, for the purpose of this case, that the record imports verity, and must prevail as against the affidavit of counsel. Our conclusion, therefore, upon this assignment of error will be

based upon the record, showing that no objection was made by the defendant or his counsel to the manner of selecting the jury, which was based upon the irregularities detailed in the affidavit. The affidavit is as follows: "Taylor Crum, being duly sworn, says that he was present, as counsel for the defendant, on his trial on an indictment for murder, on the 16th day of April, 1889; that when the case was called for trial only fourteen of the regular panel were in court, all others being excused by the court. A jury composed of such part of the regular panel called for civil actions, and in part of persons summoned from the body of the county to complete such panel, were present in the court room; that, upon proceeding to the formation of the trial jury, the clerk did not prepare separate ballots, containing the names of persons returned as jurors, either as provided by law or otherwise; that no ballots were folded and deposited in a sufficient box, or any box, either as provided by law or otherwise; that no box was shaken or closed, so as to intermingle any ballots; that the clerk did not, without looking at any ballots, draw them from any box, either as provided by law or otherwise; that the clerk had no box or other receptacle whatever, of any kind whatever; that no ballots whatever, of any kind whatever, nor any separate pieces of paper whatever, were prepared by the clerk, or any other person; that the clerk called out, from his mind, or from a list of names before him, and not otherwise, one by one, the names of persons to act as trial jurors, some of whom were on the regular panel summoned for civil actions, and others specially summoned from the body of the county to complete such panel; that in the formation of the trial jury there was no compliance, in any respect whatever, with the provisions of law relative to the formation of the trial jury, as provided in §§ 7324, 7326, 7331, and 7332, Comp. Laws Dak. being chapter 7, tit. 7, Code Crim. Proc. Dak.; that upon discovery of the proceedings, and before the commencement of the trial, and before the trial jury had been collectively sworn to try the case, defendant, by his counsel, objected to the manner of calling the jury, and thereby challenged the array of trial jury, which objection or challenge was overruled." The

irregularities of the clerk in calling the jury, as charged in the affidavit, are not disputed; and we shall assume that they occurred as stated in the affidavit. Such facts, supplemented by statements of fact contained in the bill of exceptions, may be profitably recapitulated here. They are briefly as follows: *First*, the irregularities of the clerk in calling the jury did occur substantially as set out in the affidavit of counsel; *second*, defendant's counsel was present as senior counsel, and discovered said irregularities while they were going on, and before the jury was collectively sworn; *third*, that, upon discovering such irregularities, defendant's counsel objected to the "manner of selecting the jury," but did not base his objection in whole or in part, upon the irregularities set out in the affidavit, but based his said objection upon another and independent ground; *fourth*, said irregularities were not in any manner brought to the attention of the district court until after the verdict, nor until said affidavit was presented to that court as a part of defendant's application for a new trial. We look in vain through the record for any evidence that defendant did, at the time he discovered the irregularities described in his affidavit, or at any time, "challenge the array," as is erroneously stated in the affidavit. A challenge to the array, under the statute, is known as a "challenge to the panel." Such challenge must be in writing, specifying the facts, and cannot be taken after a juror is sworn. At the time the irregularities were going on which are complained of, it was too late to challenge the array. Code Crim. Proc. § 315. No such challenge was made. Applying established principles governing the formation of trial juries, both in civil and criminal cases, it would have been the manifest duty of the trial court, if its attention had been called to the flagrantly illegal mode of impaneling the jury adopted in this case, to promptly dismiss all jurors thus unlawfully called into the jury-box. No court would have ventured to proceed with the trial, under such circumstances, if it had known of the irregularities of the clerk before the trial began. But, in the case at bar, as before shown, defendant's counsel discovered the clerk in the commission of the acts complained of, and suppressed, or did not make known to the court, his knowledge of

the same until after the verdict, and then brought the irregularities to the attention of the court by his own affidavit made in support of a motion for a new trial. The facts disclosed by the affidavit, supplemented by other facts contained in the bill of exceptions, call only for the application of principles long ago laid up among the fundamentals of the law of procedure. ·The defendant must be held to have waived the irregularities of which he now by his counsel so eloquently complains. This principle of waiver is settled by an overwhelming array of authority. Thomp. & M. Juries, §§ 278, 296, and notes. Also 1 Thomp. Trials, § 113, and note 1, p. 111; Clough v. State, 7 Neb. 320; U. S. v. Gale, 109 U. S. 65, 3 Sup. Ct. Rep. 1; Thrall v. Smiley, 9 Cal. 529; People v. Coffman, 24 Cal. 230; Com. v. Justices, etc., 5 Mass. 435. We quote from the opinion in the case of People v. Coffman, *supra*: "The defendant was indicted for the murder of one Deady, and was convicted of murder in the first degree in the district court of El Dorado county. The defendant moved for a new trial, and in arrest of judgment, both of which motions were overruled; and, judgment having been rendered upon the verdict, defendant appeals. One of the errors assigned by the defendant is the illegality of the manner of impaneling the trial jury; and, to show such illegality, he relies wholly upon the affidavit of the clerk·of the district court, which states that, after the regularly summoned jury had been exhausted without completing the jury, the court ordered ten special jurors to be summoned, and a jury was completed by calling the special jurors from the list, without having their names written upon the ballots, and drawn from·a box. The affidavit was filed at the time of filing the motions for a new trial and in arrest of judgment. The statement in the record, however, respecting the impaneling of the jury, is as follows: 'This cause coming on for trial, the following named citizens were duly accepted, impaneled, and sworn as the jury to try the cause, to-wit.' And following this, are the names of twelve jurors. It does not appear from the record of the proceedings, nor from the statement on appeal, that any irregularity occurred in drawing or impaneling the jury; nor does it appear therefrom, or from said affidavit, that the defendant at the time pointed out any irregular-

ity, or objected to any of the proceedings, in drawing or impaneling the jury. The defendant is entitled to have all the formalities observed that are prescribed by law for the summoning, drawing, and impaneling of the jury, and, if any omission or irregularity in that respect occurs, he is entitled to have the same corrected; and, if not so corrected upon its being pointed out by the defendant, it is error. But, as most of those proceedings are merely formal, and do not affect the substantial rights of the defendant, if he omits at the proper time to interpose his objections to any irregularity, he is deemed to have waived them. They cannot be raised for the first time on a motion for a new trial. He will not be permitted to take the chances of a trial before a jury that he knows has not been impaneled in strict conformity to law, and, after an adverse verdict, to move to set it aside on account of an irregularity that he can fairly be deemed to have assented to. This doctrine has been announced by this court in respect to grand and trial jurors. People v. Roberts, 6 Cal. 215; People v. Chung Lit, 17 Cal. 321; People v. Romero, 18 Cal. 89."

Among the jurors was one Anderson, who was examined as to his qualifications as a juror, and was "challenged for cause by defendant's counsel." The challenge was defective as being inexact in form, in this: It did not state the ground of the challenge, nor specify whether it was interposed for general disqualification, or whether it was for implied bias or for actual bias. Authority could readily be found which would have warranted the trial court in overruling a challenge thus loosely and informally made, but it does not appear that the district court considered the form of the challenge; and we prefer to place our decision upon this point upon another ground. The examination of the juror, as made by both counsel and the court, would have been proper upon a challenge for actual bias. The challenge was overruled, and an exception was taken to the ruling. The record is wholly silent as to whether the defendant did at any time use any of the numerous peremptory challenges allowed by statute to a defendant in a capital case. Consequently, it does not appear affirmatively that defendant's peremptory challenges were exhausted at the time the challenge

for cause as to Anderson was overruled. Error is not presumed, but must appear affirmatively. If defendant's peremptory challenges were unexhausted at the time his challenge for cause was overruled, Anderson could, if objectionable to defendant, have been gotten rid of by peremptory challenge. Under these circumstances, this court will not consider the error assigned in overruling the challenge for cause, because it does not appear that defendant was prejudiced by such ruling. By a decided preponderance of authority, the rule is established that no advantage can be taken of the improper overruling of a challenge for cause to an individual juror where the party ruled against has not previously exhausted his right of peremptory challenge. Robinson v. Randall, 82 Ill. 522; Wilson v. People, 94 Ill. 299; Anarchists' Case, 12 N. E. Rep. 866; State v. Elliott, 45 Iowa, 486; State v. Davis, 41 Iowa 311; People v. McGungill, 41 Cal. 429.

It appears from the testimony of a witness for the prosecution, Dinan, that he was detained as a witness, and was confined as a prisoner in the county jail while the defendant was there awaiting trial. Dinan testified that while both were in jail the defendant handed to him two unsigned written documents, (Exhibits C and D,) which are as follows: Exhibit C, "If you can help me out of this I can raise you some money. What good will it do for you to testify against me?" Exhibit D, "It is getting late in the season. Why in hell don't you go before cold weather sets in?" Defendant's counsel objected to the introduction of these exhibits on the ground that it did not appear that they were signed by the defendant, nor that the witness Dinan was acquainted with defendant's handwriting. The objection was overruled, and defendant excepted. This was not error, as the testimony was competent *prima facie*, independent of any question of handwriting, on the ground that the writings were adopted by the defendant as his own when he personally handed them to the witness. Exhibits C and D were also shown by other testimony to be in defendant's handwriting. But the defendant has the right to show by proper evidence that the exhibits were not in his handwriting. This was attempted to be done by placing upon the stand a witness who produced letters

(Exhibits G and H) purporting to be written by the defendant, and which the witness stated he had received by due course of mail. The letters had no relevancy to the issues in the case. The letters were offered in evidence by defendant's counsel "solely for the purpose of comparison." The court ruled out the letters, and defendant excepted to the ruling. This was not error. The territorial district courts were inferior courts, and bound by precedents made by the United States supreme court, which court holds that, to be admissible for purposes of comparison, a paper must not only be admitted or proved to be in the handwriting of a party whose writing is in dispute, but it must also be a paper "in evidence for some other purpose in the cause." The letters were not in evidence for any purpose, and hence under this rule, which is a strict rule of the common law, the letters were properly excluded. Moore v. U. S., 91 U. S. 270; Strother v. Lucas, 6 Pet. 763; Vinton v. Peck, 14 Mich. 287. In England, and in many of the states, the common-law rule has been expanded by legislation so as to allow comparison to be made of handwriting which is admitted, or proven to the satisfaction of the court to be genuine, whether in evidence for other purposes or not. Again, it is true that a large number of the states have, without legislation, adopted the more liberal rule by judicial decisions. See collection of authorities in 9 Amer. & Eng. Cyclop. Law 283-289. Should the question come before this court in an action arising since the state was admitted into the Union, we should then feel at liberty to adopt a rule for this state untrammeled by our decision in the present case. Defendant's counsel next made the following offer: "At which time defendant, by his counsel, offers to show, by expert testimony and comparison of handwriting, that the paper writings marked 'Exhibits C and D' are not in the handwriting of the defendant, by comparison of handwriting known to be his, which offer is denied by the court, to which ruling defendant, by his counsel, duly excepts." It does not appear by this offer of testimony what particular writing was referred to as writing "known" to be in defendant's handwriting. No specimen of handwriting was shown in connection with the offer; nor was it stated by counsel that the writing to which he referred was a writing then

in evidence, or to be put in evidence. For reasons given in Moore vs. U. S., *supra*, the ruling was not error.

The next witness was one Torson, who testified that he was a lawyer, and had been a teacher of penmanship, and had seen defendant write. He was examined by the court as follows: "I understand, Mr. Torson, that it was at noon, since recess, that you saw him write." Answer. Yes, sir. (Exhibits C and D shown witness.) Question. You may state whether or not, in your opinion, the defendant, Maurice O'Hare, wrote those exhibits? (The counsel for the territory objects to this question on the ground that it is incompetent, irrelevant and immaterial. Objection sustained by the court, to which ruling defendant, by his counsel, duly excepts.) By the court. I understand you, Mr. Torson, you never saw the defendant write until since the adjournment at noon-time? A. No, sir; that is the first time I saw him write. Q. And that upon the request of defendant's counsel? A. Yes, sir." This ruling was correct, as the law is well settled that, where the knowledge of the handwriting has been obtained by the witness from seeing the party write for that purpose, after the commencement of the suit, the evidence is held inadmissible. See note 2, 1 Greenl. Ev. § 577; Reese v. Reese, 99 Pa. St. 89; 9 Amer. & Eng. Cyclop. Law, 277, note 3.

Defendant voluntarily took the stand as a witness in his own behalf, and testified at large upon the issues. Upon cross-examination, he was required to testify to his antecedents, and in doing so stated that he had passed under the name of "Sullivan" at Fargo, and had been in jail at Fargo and at Stillwater, Minn. This testimony was objected to by defendant's counsel as irrelevant, and not proper cross-examination. The objection was overruled, and the ruling is assigned as error. It is well settled that witnesses who are not parties may, for purposes of impeachment, and within the sound discretion of the trial court, be required to testify as to facts, tending to degrade them, which are collateral to the issue. U. S. v. Wood, 33 N. W. Rep. 59, citing Shepard v. Parker, 36 N. Y. 517; La Beau v. People, 34 N. Y. 233; Real v. People, 42 N. Y. 270; Wilbur v. Flood, 16 Mich. 40; Foster v. People, 18 Mich. 265; State v.

McCartney, 17 Minn. 76, (Gil. 54.) By the great weight of authority, the same rule obtains as to parties where, as in Dakota territory, the statute permits parties to testify as witnesses, and does not limit the right of cross-examination. People v. Giblin, (N. Y.) 21 N. E. Rep. 1062. The question of privilege is not presented in the case at bar, as the witness did not claim his privilege. See People v. Brown, 72 N. Y. 571; Yanke v. State, 51 Wis. 464, 8 N. W. Rep. 276; McBride v. Wallace, 29 N. W. Rep. 75; People v. Cummins, 11 N. W. Rep. 184; Anarchists' Case, 12 N. E. Rep. opinion page 979. In State v. Pfefferle, (Kan.) 12 Pac. Rep. 406, the court says: "Where a defendant in a criminal case takes the witness stand to testify in his own behalf, he assumes the character of a witness, and is entitled to the same privileges and subject to the same treatment, and to be contradicted, discredited, or impeached, the same as any ot her witness." See People v. Clark, (N. Y.) 8 N. E. Rep. 38; State v. Clinton, 67 Mo. 380; State v. Cox, id. 392. Since the above-cited Missouri cases were decided, a statute has limited the right of cross-examination in that state. Formerly, there was a statute in Michigan as follows: "The defendant shall be at liberty to make a statement to the court or jury, and may be cross-examined upon any such statement." Sess. Laws 1861, p. 169. The case of Gale v. People, 26 Mich. 157, was a decision made under the Michigan statute above referred to, but the case is not authority here, as we have no similar statute. Under a later statute, the rule in Michigan is the same as that adopted by the court below. People v. Cummins, *supra.* The cases cited in the brief of defendant's counsel, upon this point, from the states of California, Michigan, Missouri, and Oregon are, respectively, adjudications made upon local statutes restricting the common-law right of cross-examination upon collateral matters for purposes of impeachment. We hold that the right of cross-examination as to outside matters of fact, which affect the general character of the witness, and tend to degrade him, and affect his credibility, is within the limits of a sound judicial discretion, a salutary rule. We find no abuse of judicial discre-

tion in this matter in the record, and therefore overrule defendant's assignment of error upon this point.

Another error assigned relates to the refusal of the district court, on request of defendant's counsel so to do, to interpose and stop a certain line of remarks which were made by the district attorney to the jury in opening the case for the territory. We have carefully examined the record bearing upon this point, and are satisfied that the language of the district attorney did not transcend the bounds of either law or propriety, and that the re-refusal of the court to intervene was not error.

We shall notice but one exception to the charge of the court to the jury, namely, defendant's fifteenth exception to the charge, which reads as follows: "There is no person in this case that tempts to speak of the killing of this man, except two—I mean, as to the direct, positive testimony. Those are the man Dinan and the man Brown. In considering the evidence of Dinan you are to take into consideration all the facts and circumstances of the case, so far as you can—his history; his appearance upon the stand; every element in his character as touching upon his honesty, upon his truthfulness; whether or not, in the past, he has been convicted of crime; whether or not he has been punished; whether or not he has been reformed; whether or not he has been leading an honest life at the time of this transaction. All of these are matters to be considered for the purpose of enabling you to say whether or not, when he testifies in this case, he is telling the truth, or whether he is testifying from motives of revenge, or what his motives are. What is said of him would be true of any other witness. It appears in the case that he was at one time in the penitentiary in Missouri, as he says to you. About all that is known of his former history is what he gives himself; but he tells you that he has been in the penitentiary, and he tells you the crime that he was in for—attempt to rob. All that you know as to whether that is true or not, or whether he was in the penitentiary, or the length of time, is his own statement. In considering the testimony of a person who has been convicted of a crime you should take into account his character, the crime of which he is charged, and the object of the law in convicting men, which is, in the first place, to protect society, and

at the same time, if it is possible, to reform the man. Undoubt-
edly, it was the law of the jurisdiction that convicted this
man to protect society, as to that crime; and it was, at the same
time, its object to reform him. It is for you to say, under his
history, so far as you know it, whether or not he has convinced
you that one object of the law has been gained in his reforma-
tion, or whether it has had no effect, and whether or not he is
unworthy of belief. The reason I speak of this more particularly
at this time is as bearing on the character and weight of his testi-
mony, and also that of another witness, of which I shall now speak.
I allude to the witness Brown. Here is a man who comes into
court; says that he has been charged with the crime of murder in
a foreign jurisdiction—in the state of Minnesota; that he had been
convicted of murder and that he has been sentenced to death.
The object of the law in convicting men and making them suffer
the death penalty, is to protect society, and for the reason that
there is no further need of trying to reform them; that they are
so far gone that, for the protection of society, they should be
executed. Hence the law steps in and says that, if they commit
certain crimes, death shall follow. I call your attention to that
for the purpose of assisting you in weighing the testimony of the
man Brown, in determining whether or not the testimony of a man
who is convicted of murder—a man who is under sentence of death
—is of such a character and such a kind as to invite your credit.
In order to so determine, you may consider whether he has shown
any signs of penitence, any signs of humiliation, any signs of
obedience to law and order, or whether his testimony is brazen,
bold effrontery, for the purpose of screening another, or for the
purpose of adding one more crime to the list of those he has al-
ready committed. I say, these are circumstances for you to take
into consideration. I invite your attention to them simply as
circumstances that you have a right to take into consideration
and view in weighing his testimony. Then, after you have
viewed it in the situation in which it is placed before you, if it
is entitled to credit, you have a right to credit it all. You have
a right to believe every word this man Brown has spoken. You
have a right to discredit it. You have a right to treat that wit-
ness as he stands, in the eyes of the law, before you, in his true

character, and it is then for you to say whether or not he is entitled to belief. A great deal that I have said in reference to those two witnesses can be said as to any other witnesses without repeating it." To which charge of the court defendant, at the proper time, excepted.

After repeated perusals, and a very careful consideration of the charge as a whole, we are unanimously of the opinion, and shall so hold, that the language embraced within the fifteenth exception above quoted was an invasion of the substantial legal rights of the defendant, and, as such, reversible error. It is quite clear to us that the statement in general terms, which was reiterated in the charge, to the effect that the jury were the exclusive judges of the facts, and of the credibility of witnesses, did not operate to obliterate the impression conveyed to the jury by the strong and unmistakable language employed by the trial court, when speaking particularly of the testimony of the witness Brown as contrasted with that of the witness Dinan. The language now under review was, we do not doubt, intended by the learned judge who used it to be fair and impartial, but, in our opinion, the effect of such language was quite the reverse of fair and impartial. As we construe the words in question, ·they constitute an argumentative and persistent attack from the bench upon the credibility of defendant's principal witness, Brown. If Brown's testimony was true, the defendant was innocent of the charge. While in prison under sentence of death for a murder committed in the state of Minnesota, Brown volunteered to give his deposition in defendant's behalf; and it was taken by a commissioner appointed by the trial court, and read to the jury. Under such solemn circumstances, Brown testified in substance and in detail, that he was present at the killing of Casey; that he (Brown) shot and killed Casey, and, further, that he did not see the defendant there when the homicide occurred. In that portion of the charge in question the trial court pointedly calls attention to, and exhaustively considers, the question of the credibility of the witness Dinan, who swore that he saw the accused shoot Casey, and the testimony of the witness Brown, who testified that he alone killed the deceased. The life of the defendant

was involved in the issue, and the verdict must have turned upon the question of the relative credibility of these two witnesses. Under our system of criminal trials, the jury are the sole judges of the weight of testimony and credibility of witnesses. Under the law the defendant had the unassailable, conceded right to the unbiased judgment of the jury upon the vital question of the credence to be given to Brown's version of the homicide, without having the question practically determined for the jury, adversely to the defendant, by oblique allusions and argumentative comments from the bench, whereby Brown's testimony was held up for observation in terms which unfavorably contrasted the character and credibility of Brown with that of Dinan. The court stated, in effect, that Dinan, in legal contemplation, was a man not yet sunk so low as to be beyond reformation, and therefore that it was permissible at least to give the testimony of Dinan the credit due to the testimony of an honest man. No such charitable suggestion was made as to the case of Brown. For purposes of an argumentative contrast to Brown's disadvantage the court adverted to the elementary doctrine of the text-writers, viz., that the law, in punishing criminals, had a twofold object in view—one object being to protect society, and the other to reform the criminal; and almost in the same breath they were told that Brown was, in the eye of the law beyond reformation, having been sentenced to suffer death. The court said: "The object of the law in convicting men, and making them suffer the death penalty, is to protect society, and for the reason that there is no further need of trying to reform them; that they are so far gone that for the protection of society they should be executed. Hence the law steps in, and says that if they commit certain crimes death shall follow." The court continues: "I call your attention to that for the purpose of assisting you in weighing the testimony of the man Brown, in determining whether or not the testimony of a man who is convicted of murder—a man who is under sentence of death— is of such a character and of such a kind, as to invite your credit; and, in order to so determine, you may consider whether or not he has shown any signs of obedience to law and order, any signs of penitence, any signs of humiliation, or whether his testimony is

bold, brazen effrontery, for the purpose of screening another, or for the purpose of adding one more crime to the list of those he has committed." We note here that it did not appear in the case that Brown had committed any "list of crimes," or any crime save one. But the language last quoted made the question of Brown's reformation depend upon his having shown evidence of "penitence, any signs of humiliation, any signs of obedience to law and order." Certain it is that no such evidence of Brown's reformation is contained in the record, and equally certain that no such evidence, if offered, would have been competent. The jury might well conclude, from this feature of the charge, that, in the absence of any of the required evidence of Brown's reformation, they would be justified in concluding that Brown had not in fact reformed, and consequently was unworthy of belief. It followed in natural and logical sequence for the court to say, as it did say, in that immediate connection, that the jury "might consider whether Brown's testimony is bold and brazen effrontery, for the purpose of screening another, or for the purpose of adding one more crime to the list of those he he has already committed." We think that it would have been much more fair and impartial if the trial court had somewhere thrown into its remarks to the jury, by way of counterpoise, some suggestion or theory of Brown's evidence which would have been consistent with its truthfulness. It strikes this court quite forcibly that it would have been only fair to the defendant if the district court had suggested, as an aid to the jury, a hypothetical question something like the following: Whether it was probable that a man in Brown's position, standing upon the confines of the grave, and about to be ushered into the presence of a God whose commands he had ruthlessly broken, with no perceptible selfish interest to spur him to the deed, would be likely to publish to the world a false accusation of murder against himself, and then, to bolster such false accusation, commit the additional crime of perjury, by calling upon the name of his Creator and Final Judge to witness that his false charge of murder against himself was true. Such a view as that suggested above would, in the opinion of this court, not have been too far-fetched, and would have been a theory of Brown's testimony, to say the least, as in-

trinsically probable, as a theory, as that advanced in the other direction by the trial court, viz., whether or not such testimony was "bold and brazen effrontery."

We will conclude our comments upon this branch of the case by saying, briefly, that, where a trial court assumes to remark upon the weight of testimony, or upon testimony affecting the credibility of witnesses, it is treading upon delicate and dangerous ground, and cannot be too cautious about revealing its own opinion to the jury. If hypothetical suggestions are made at all to aid a jury in weighing the testimony, or in estimating the credibility of a witness, such suggestions should be impartial, and not look in one direction only. The statute regulating instructions in criminal cases allows the judge to "state the testimony," but declares that he "must not charge the jury in respect to matters of fact." See § 343, Code Crim. Proc. To say to the jury that the testimony of a material witness is unworthy of belief, whether the statement is made directly or by way of inference, is indirectly charging the jury as to matters of fact, and contrary to the spirit of the statute. The court can state the testimony, but is forbidden to charge or advise as to the facts. A different rule prevailed at the common law, and in some of the states; but the statute has changed the common-law rule in this jurisdiction. The authorities cited below are from jurisdictions where the matter of charging the jury is regulated by enactments similar to our own, and will fully sustain our views upon this branch of the case. See cases collated in 2 Thomp. Trials, §§ 2285-2287. See Thomp. Char. Jur. § 36. See, also, Dingman v. State, (Wis.) 4 N. W. Rep. 668; Lampe v. Kennedy. (Wis.) 18 N. W. Rep. 730; People v. Lyons, 49 Mich. 78, 13 N. W. Rep. 365; Mawrich v. Elsey, 47 Mich. 10, 10 N. W. Rep. 57.

We will conclude this opinion by saying that it behooves this court, as a court of last resort, in deciding the first criminal case ever brought before it for review, and that a case of homicide, not to allow a prejudicial charge upon the facts, such as we conceive that given in this case to have been, to pass unchallenged, and thereby become a precedent. Our duty is, on the contrary, to make sure, at this early date in the history of

the jurisprudence of the state of North Dakota, to uphold with a strong hand the safeguards of life and liberty which the law throws around all who invoke its protection. The judgment is reversed, and a new trial granted.