[File No. Cr. 174]

STATE OF NORTH DAKOTA, Respondent, v. WALT SCHMIDT, Also Known as Waldemar Schmidt, Appellant.

(10 NW(2d) 868)

720

Opinion filed July 10, 1943.   Rehearing denied September 13, 1943.

*Murray & Murray,* for appellant.

*Alvin C. Strutz,* Attorney General, *Milton K. Higgins,* Assistant Attorney General, and *A. O. Ginnow,* State's Attorney, for respondent.

CHRISTIANSON, J.   The defendant was convicted of the crime of embezzlement and has appealed from the judgment of conviction and from an order denying his motion for a new trial.

The criminal information on which the prosecution is based charges that one Juengling, the county treasurer of McIntosh county, on January 7, 1939, comimtted the crime of embezzlement "by converting to his own use certain moneys and securities of the sum of $1,084, which said money and securities were then and there the property of the said county of McIntosh and state of North Dakota and other legal subdivisions thereof, and not the property of the said Gotthilf Juengling, or the defendant Walt Schmidt; that at said time the defendant Walt Schmidt was the duly elected, qualified and acting county auditor of McIntosh county, and that the said Walt Schmidt did then and there willfully, unlawfully, and feloniously participate in the embezzlement aforesaid, and that he did advise and aid in the commission of the said embezzlement, and that he did receive of the said sum of $1,084 thus embezzled, the sum of $600."

Juengling, the county treasurer, testified as a witness for the state. The defendant also testified.   The evidence adduced discloses that Juengling, the county treasurer, in 1937 and 1938 made advances, out of county funds, both to himself and to the defendant Schmidt against salaries to be earned by them as such county officers.   The evidence further discloses that this practice was not restricted to these two officers, but that similar advancements were made to other county officers not only by Juengling but by one or more county treasurers who had preceded him in office.   One witness testified that the practice had been carried on some twenty years before.

The advances were made with the understanding that the amount advanced would be repaid when the person to whom the advance had been made received his salary warrant. Apparently the advances had generally been repaid. That is true, also, of the first advances made to the county treasurer Juengling and to the defendant Schmidt. Advances were made to them, however, in excess of repayments.

The procedure that had been adopted was that an officer to whom moneys were advanced gave his check for the amount to the county treasurer, and the county treasurer held the check as a cash item until the officer received payment of his salary, then the check was cashed or the amount paid to the treasurer and the check returned to the maker. During the years 1937 and 1938 certain advances were made by the county treasurer to the defendant Schmidt in the manner indicated. Some repayments were made, but certain checks remained unpaid, and the amount advanced grew to a considerable sum. Apparently there was no attempt to make false entries or to conceal what was done, and, according to the testimony of Juengling, a deputy examiner who examined the treasurer's office in the fall of 1938, in observing the checks that were held by the county treasurer, criticized the practice that had been followed and informed the treasurer that it was improper and illegal for him to make such advances, but that advances might be made to county officers if the county commissioners authorized advances to be made on the condition that the advances be liquidated from subsequent salary warrants.

The evidence discloses that Juengling, the county treasurer, informed the defendant of the statement of the deputy examiner and that the defendant prepared, and the county commissioners signed, a written instrument dated January 6, 1939, authorizing advances to be made to the elective officers of the county, with the proviso that a note be taken for each advance and that the county treasurer should withhold from the next warrant of the recipient, a sum equal to the amount of the note; but that in the event the advance exceeded $25, that then the county treasurer should deduct $25 from each month's salary until the note was paid, and that in no case should the advance be more than would enable the borrower to repay the same during the period of his term of office, and that the borrower should pay interest at the same

rate which the county would be required to pay if it borrowed funds.

There is conflict in the testimony as to the circumstances under which such written authorization was given. It is the contention of the State that the defendant did not inform the county commissioners of certain material facts, and that the written authorization, in effect, was obtained by deception. The defendant, on the other hand, testified that he acted in the very best of faith and in reliance upon the suggestion of the deputy state examiner, and that he did not intentionally withhold from the commissioners any information that was material; that he felt there was no occasion to inform them that the county treasurer then held checks for certain advancements that had been made to the defendant, and that the county treasurer held his own personal checks for advancements which he had obtained. The defendant testified that he knew nothing about the advances that had been made to the county treasurer until after the written authorization had been made by the county commissioners. Thereafter, on January 7, 1939, the defendant executed his note to the county for $600, and the defendant Juengling executed his note for $480. Thereupon the defendant issued a county auditor's warrant payable to the county treasurer in the amount of $1,-084. This warrant contains a recital that it is given ":for advances to officers." Upon the delivery of the warrant, the checks then held by the county treasurer theretofore given to him by the defendant and Juengling were returned to the makers of such checks. The county treasurer stamped the warrant paid and placed the two notes which do had received from the defendant and Juengling in a file in his office containing papers of a similar character owned by the county. Later some payments were made by the defendant and applied on his note. Both the defendant and the county treasurer Juengling testified that they believed that the practices which they followed, both in the first instance and under the written authorization, were proper and legal. The defendant testified that he had submitted the matter to the state's attorney of the county for his opinion and that the state's attorney had advised him that there was nothing improper or illegal in the practice of making advancements to county officers. The state's attorney, however, denied that he had given any such advice.

All the county commissioners who signed the authorization were

called as witnesses by the state. As said, there was some conflict between their testimony and that of the defendant as to the circumstances under which the written authorization was given; but each of the commissioners testified that he had received advances from the county treasury. Some of such advances were made after the compensation had been earned, but before payment had been approved and warrant issued. In at least one instance, however, the advance was made to a county commissioner where compensation had not yet been earned for ·the full amount advanced.

Appellant's assignments of error are predicated upon the overruling of a demurrer to the information, rulings on evidence, instructions to the jury, and the denial of the motion for a new trial.

Defendant demurred to the information on the ground that the facts stated therein did not constitute a public offense on the part of the defendant. The specific contention is that there is no allegation as to any specific acts by the defendant Schmidt, and that the allegation that "he did aid and advise" in the commission of the acts which the treasurer is charged with having committed, constitutes a mere conclusion.

According to our statutes, "Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted." Comp Laws 1913, § 9929. And, "if any county treasurer or other officer or person charged with the collection, receipt, safe keeping, transfer or disbursement of public moneys or securities, or any part thereof belonging to the state or any county, precinct, district, city, town or school district shall convert to his own use, or to the use of any other person or persons, body corporate, association or party whatever, in any way whatever, such public moneys or securities, or any portion thereof, . . . or if any person shall advise, aid or in any manner knowingly participate in such act, every such act shall be deemed and held in law to be an embezzlement of so much of said moneys or securities as aforesaid as shall be thus converted." Comp Laws 1913, § 9930.

The information in this case charges that the defendant committed embezzlement, but it does not refer to any section or subsection of any statute creating the offense charged.

The state asserts, however, that when construed under the provisions

of chap 132, Laws 1939, the information is sufficient to show a violation of Comp Laws 1913, § 9930, supra. We are of the opinion that this contention of the state is correct. The defendant, however, contends that said chap 132, Laws 1939 is unconstitutional. It does not appear that this question was raised in the court below (11 Am Jur 772, Constitutional Law, § 125; Company "A", First Regiment v. Hughes, 53 ND 291, 305, 205 NW 722, 728; State v. Bickford, 28 ND 36, 83, 84, 147 NW 407, 424, Ann Cas 1916D 140) and the only constitutional provision pointed out by appellant in this court as being violated by the statute is Article 5 of the amendments to the Constitution of the United States. The statute is presumed to be valid and constitutional. This presumption is conclusive, unless it is clearly shown that the enactment violates some express or implied restriction of the state or Federal Constitution. State ex rel. Linde v. Taylor, 33 ND 76, 85, 86, 156 NW 561, LRA1918B 156, Ann Cas 1918A 583; 16 CJS 250–274. And "it is incumbent upon one attacking the constitutionality of a law to point out the specific provision of the Constitution which is violated." Baird v. Rask, 60 ND 432, 437, 234 NW 651; State v. Ligaarden, 59 ND 475, 478, 230 NW 729, 70 ALR 126. The Fifth Amendment to the Constitution of the United States has no application to a state law. It is well settled that the first Ten Amendments to the Constitution of the United States "do not apply to the states, but constitute limitations on the power of the Federal government only." 16 CJS pp. 129 et seq.; Donaldson v. Bismarck, 71 ND 592, 3 NW(2d) 808.

Assignment of error are also predicated upon rulings on evidence.

The state was permitted to show on cross-examination of the defendant that McIntosh county was in financial straits and that it had become necessary for the county to borrow money with which to pay its operating expenses.

On cross-examination the defendant was required to testify that salary warrants issued by him to himself as county auditor, and salary warrants issued to other county officers did not have stamped thereon words showing the amount of outstanding delinquent personal property taxes of the payee named in such warrant as prescribed by chap 273, Laws 1935.

Said chap 273 provides that: "When the county issues a salary

warrant to any county officer, . . . it shall . . . be the duty of the county auditor to ascertain from the records aforesaid if there are any personal property taxes delinquent by the person who earned the salary or wages for which said salary warrant is being issued, and, if there are any, to stamp or write in red ink across the face of said salary warrant the following words: 'Personal property taxes of ........................:.......... (Name) delinquent $...... and interest and penalty will be deducted from warrant when paid,' . . . ;" and it further provides for deduction of the amount of taxes so due from the salary warrant bearing such indorsement and if necessary from subsequent warrants.

All of this testimony, namely, the testimony as to the financial condition of the county and the failure of the county auditor to stamp the salary warrants was elicited on cross-examination of the defendant over appropriate objection on the part of the defendant to the questions propounded. The several rulings were assigned as error on the motion for a new trial and are assigned as error on this appeal.

All the testimony in question was apparently offered on the theory that it constituted competent and relevant evidence bearing directly upon the guilt of the defendant. It was not offered as bearing upon the credibility of the defendant as a witness. In its instructions the court said: "The Court has admitted in evidence things that the defendant did, such as issuance of other warrants, that is, warrants other than what he is charged with, in this case. You cannot convict him for any crime based upon the issuance of those other warrants or doing those other things. The reason why the Court admitted those other warrants in evidence and admitted in evidence the doing of other things by this defendant was for the purpose of aiding you in arriving at the fact whether or not the defendant is guilty of any crimnial intent at the time he did the things he is charged with in the information."

There was no instruction restricting the testimony elicited on cross-examination to the question of credibility. In this court counsel for the state, who conducted the trial in the court below, argues that the testimony relating to the financial condition of the county and the failure of the defendant to stamp the salary warrants constituted competent evidence upon the question of good faith and intent.

It seems entirely clear that the testimony in question, which was elicited on the cross-examination of the defendant, must have been considered by the jury as relevant evidence bearing directly upon the question of the guilt of the defendant.

In our opinion the cross-examination was improper and the objections thereto should have been sustained. The testimony sought to be elicited, and elicited, was not relevant to any issue in the case. It did not pertain to any matter about which the defendant had testified on his direct examination on the former cross-examination.

The defendant claimed that the salary advances were made in good faith. In other words, it was and is the contention of the defendant that the moneys, which the state charged had been unlawfully appropriated by the county treasurer, "was appropriated openly and avowedly, and under a claim of title preferred in good faith," and, hence, that even though such claim was and is untenable, there was no embezzlement under the provisions of § 9938, Laws 1913, which reads: "Upon any information or indictment for embezzlement it is a sufficient defense that the property was appropriated openly and avowedly and under a claim of title preferred in good faith even though such claim is untenable. But this provision shall not excuse the retention of the property of another, to offset or pay a demand held against him."

The ultimate question involved in this case is whether the defendant is guilty of the particular offense which he is charged with having committed, namely, embezzlement. Hence, the only evidence properly admissible in the action was such as tended to establish either the guilt or innocence of the defendant of the particular offense which he was charged with having committed, or which was relevant upon the question of credibility of witnesses. The state had the burden of establishing the guilt of the defendant, and it must sustain that burden by the means of competent, legal and relevant evidence. Whether he was guilty of some other offense or had committed improper acts in other matters that were in no manner connected with the offense with which he was charged and the proof of which did not tend to establish any of the relevant facts involved in the charge made against him, were not proper matters of inquiry in this case. State v. Flath, 61 ND 342, 347, 237 NW 792; State v. King, 53 ND 95, 204 NW 969; State v. Gleim, 17 Mont 17, 41 P 998, 31 LRA 294, 52 Am St Rep 655.

Such inquiry would be proper only if such other offenses or improper acts were so connected by circumstances with the particular crime in issue that the proof of such other crimes or misconducts had some direct bearing upon the issue on trial, or was relevant as bearing upon the credibilty of the testimony of witnesses.

In a case where facts are in issue and witnesses testify there may, and generally does, arise a collateral question or questions as to the credibility of witnesses. 70 CJ pp 759 et seq.; 5 Jones, Commentaries on Evidence, 2d Rev. & Enl. ed. pp 4629 et seq. The question of credibility of a witness is primarily one for determination by the triers of fact. Indeed, it has been said that "the credibility of testimony must be decided before weighing it." 70 CJ p 759.

A defendant in a criminal action cannot be required to testify, but if he desires, he may waive the privilege and become a witness. A defendant who thus voluntarily takes the witness stand in his own behalf becomes subject to cross-examination the same as any other witness. He may be examined as to any subject concerning which he has testified in his direct examination, and must answer any relevant and proper question that bears upon the issue whether he committed the crime charged. He may also be examined, the same as other witnesses, as to matters that affect his credibility as a witness. State v. Kent (State v. Pancoast) 5 ND 516, 547, 67 NW 1052, 35 LRA 518; State v. King, 53 ND 95, 204 NW 969; State v. Isensee, 64 ND 1, 19, 249 NW 898, 905.

He may be asked any question relevant to his credibility as a witness, even when such examination tends to humiliate and disgrace him. State v. Rozum, 8 ND 548, 80 NW 477. But the defendant may not be asked questions on cross-examination, which are not relevant to his credibility as a witness, and are calculated only to humiliate and embarrass him and to create prejudice against him. 3 Wharton, Crim. Ev. 11th ed, pp. 2195, 2209; 5 Jones, Commentaries on Evidence, 2d ed. Revised and Enlarged, p. 4628; Territory v. Chavez, 8 NM 528, 45 P 1107; State v. Rogers, 31 Mont 1, 77 P 293; Gideon v. United States (CCA 8th) 52 F(2d) 427; State v. Isensee, 64 ND 1, 249 NW 898, supra; Buel v. State, 104 Wis 132, 80 NW 78. The questions must relate to matters of such character (Piechotta v. Fried, 46 ND 620, 628, 181 NW 602, 604) and of such comparatively recent time

(State v. Kent (State v. Pancoast) 5 ND 516, 558, 67 NW 1052, 1064, 35 LRA 518; Territory v. Chavez, 8 NM 528, 532, 45 P 1107, 1108) as to bear "directly upon the present character and moral principles of the witness" (5 ND 558), and thus be relevant upon the question of credibility. 3 Wharton, Crim. Ev. 11th ed. p. 2209; Territory v. Chavez, supra; State v. Kent (State v. Pancoast) 5 ND 516, 541, 556, 558, 67 NW 1052, 35 LRA 518; Territory v. O'Hare, 1 ND 30, 45, 44 NW 1003, 1008. This court has held repeatedly that the admission, over the objection of the defendant, of irrelevant testimony tending to disgrace the defendant and prejudice him in the eyes of the jury constitutes prejudicial error. State v. King, 53 ND 95, 204 NW 969, supra; State v. Hazlet, 16 ND 426, 113 NW 374; State v. Nyhus, 19 ND 326, 124 NW 71, 27 LRA(NS) 487.

This court has held, also, that cross-examination of a material witness for the defendant which tends only to disgrace the witness and create a prejudice against him on the part of the jury constitutes reversible error. State v. Phillips, 55 ND 269, 213 NW 355. The same rule has been applied in civil cases. Piechotta v. Fried, 46 ND 620, 181 NW 602, supra; Flathers v. Wilson & Co. 62 SD 548, 255 NW 149; Haggard v. First Nat. Bank, ante, 434, 8 NW(2d) 5.

The defendant had not been asked on his direct examination concerning any of the matters to which the cross-examination was directed. Whether the county was or was not in financial straits and was required to issue and sell its certificates of indebtedness to obtain moneys to defray its operating expenses, obviously had nothing to do with whether the county's funds had or had not been embezzled, nor did it have any bearing on the credibility of the defendant as a witness.

Whether the defendant, as county auditor, failed to comply with the statute requiring that a notation of the amount of outstanding delinquent personal property taxes be made on warrants issued for the salary of county officers was wholly irrelevant in this case. It was remote from the question of guilt or innocence of the crime for which the defendant was on trial, and had no bearing upon his credibility as a witness.

In State v. King, 53 ND 95, 204 NW 969, supra, the defendant was convicted of robbery. Upon the trial the defendant took the witness

stand in his own behalf. On cross-examination he was asked questions and gave answers as follows:

"Did you, about eight years ago, on the streets of Donnybrook, with a firearm, shoot through the hand of one Maynard?" (This was objected to as incompetent, improper cross-examination, prejudicial, no foundation laid, and the objection was overruled.)

"A. I have might have. Yes.

"Q. Did you, in the month of April, 1920, in a fight which you had with one A. H. Rose, gouge out his eye and destroy his eye? Objected to as incompetent, irrelevant, immaterial, prejudicial, improper cross-examination, there being no foundation laid; and there is no proof of any dispute, or as to identity, or proof of any assault, nor is there a question in this record as to intent or motive.

"The Court: Overruled.

"A. I don't think I destroyed his eye.

"Q. You don't think you destroyed his eye?

"A. No sir."

"Subsequently, on motion of the defense, the state consenting that it be ·done, this testimony thus objected to was stricken from the record and the jury were admonished, as well in the charge as during the course of the trial, that they were to wholly disregard such evidence so stricken." 53 ND at pp. 99, 100, 204 NW 971.

The defendant insisted that the testimony so elicited and received was wholly irrelevant; that it had no proper tendency to establish the commission of the offense for which the defendant was being tried; that the examination was not proper for purposes of impeachment; and that the error in the admission was not cured by the court's action in subsequently striking the testimony and instructing the jury to disregard it. This court sustained the defendant's contention and held that the cross-examination constituted reversible error and that the error was not cured by the striking of the testimony and the direction of the court to the jury to disregard it.

In State v. Phillips, 55 ND 269, 213 NW 355, supra, this court held that cross-examination of a material witness for the defendant in such manner as to imply that he had rendered improper services at the trial of another criminal action some years before and that he was in at-

tendance upon the trial of that case to be a witness in the case and, "also to be very affable to the witnesses for the state and the defendant, and possibly also to the jurors in the case." constituted prejudicial error. In that case the objectionable testimony was elicited after counsel for the defendant,—upon the insistence of the witness that he be permitted to answer the questions,—had withdrawn his objection.

Obviously, if it were prejudicial error to ask these questions upon the cross-examination of a witness, it would be even more prejudicial to ask them of a defendant. Certainly it cannot be said that the testimony, which the state elicited in this case upon such improper cross-examination, may not have affected the determination by the jury.

The defendant also predicates error upon the following instructions to the jury:

"Now good faith as applied to embezzlement in this case reads as follows: 'Upon any information for embezzlement it is sufficient defense that the property was appropriated openly and avowedly and under a claim of title offered in good faith, even though such claim is untenable, but this provision shall not excuse the retention of the property of another to offset or pay a demand held against him.'

"He must, if he takes property of another, believe that it is his own. You get into somebody else's automobile, and it looks just like yours. You drive around the block and finally you find it is not yours. You are not guilty of embezzlement because you thought it was yours. But if you take property that you know is not yours, that is a different proposition."

"I charge you as a matter of law that ignorance of the law upon the part of the defendant does not constitute a defense."

"I charge you that it constitutes embezzlement under the law of this state for the county treasurer to pay out any money to any of the county officials for salaries except for a period already past, or for expenses, except for those previously incurred."

In our opinion these instructions operated to misdirect the jury in determination of the principal issue of fact in the case. As said, it was the claim of the defendant that the advances on salaries to county officers was made by the county treasurer in good faith and in the belief that he was authorized so to do, and that such payments constituted a proper

disbursement of the funds. Both the defendant and the Treasurer Juengling testified that all the advances were made in good faith and in the belief that the county treasurer had the authority to make such payments and that such payments constituted proper disbursements of the county's funds; that the original advances were so made and that when these payments came to the notice of the deputy state examiner he advised that the course that had been pursued in making advances had been irregular but that advances might properly be made if they were authorized by the county commissioners. The controversy as to the circumstances in which the county commissioners made the written authorization does not establish that the county treasurer did not actually believe that such authorization made it proper for him to disburse county funds in accordance with its provisions.

The question is not whether the authorization was valid, or even whether it was made by the county commissioners under a mistake of fact or of law, or both; but whether the county treasurer "in good faith, even though wholly mistaken in point of law," disbursed the money as he did, in the good faith belief that the persons to whom he disbursed the funds had a right to receive them, and that he had the right to disburse them in the manner and for the purposes which he did. People v. Douglas, 293 Mich 388, 292 NW 341; State v. Holen, 63 SD 151, 257 NW 108; People v. Heilemann, 362 Ill 322, 199 NE 792.

If the county treasurer made the original advances in good faith and in the belief that he had authority so to do, and that the persons to whom they were disbursed had a right to so receive them, and if he believed that the written authorization by the county commissioners authorized him to make the subsequent advances and payments, then it would be wholly immaterial whether there were any authority on the part of the county treasurer to make the original advances or whether there were any authority on the part of the county commissioners to make the written authorization, or any authority on the part of the county treasurer to make payments pursuant to such authorization.

If the county treasurer made these payments openly, avowedly and in the good faith belief that he was authorized to so do, and that such payments constituted a proper disbursement of the county's funds, then

there was no embezzlement. Comp. Laws 1913, § 9938, People v. Douglass, State v. Holen, and People v. Heilemann, supra.

In explaining to the jury the purpose, intent and meaning of Comp. Laws 1913, § 9938, the court said: "He must, if he takes the property of another, he must believe that it is his own. You get into somebody else's automobile and it looks like yours. You drive around the block and finally you find it is not yours. You are not guilty of embezzlement because you thought it was yours. But if you take property that you know is not yours that is a different proposition." The effect of this was to limit the rule of the statute to a situation where a person takes into his possession property of another which he mistakes for his own.

The act assumed in the trial court's illustration could in no event constitute embezzlement. Embezzlement arises out of the fraudulent appropriation or conversion (State v. Kopriva, 51 ND 778, 782, 201 NW 167, 169) of property by a person to whom such property has been intrusted, and who has lawfully acquired possession of the property, it does not arise where a person unlawfully takes into his possession property of another which he has no right to take or possess at all. Note in 87 Am St Rep p. 30; 29 CJS pp. 678 et seq.

"Embezzlement is broadly defined as the fraudulent appropriation of another's property by a person to whom it has been intrusted or into whose hands it has lawfully come." 29 CJS p 670. Embezzlement is generally defined by our statutes as "the fraudulent appropriation of property by a person to whom it has been intrusted." Comp. Laws 1913, § 9929.

The information in this case charged that the county treasurer, Juengling, at a specified time and place did "commit the crime of embezzlement by converting to his own use certain sums of money and securities," and "that the said Walt Schmidt did then and there willfully, unlawfully and feloniously participate in the embezzlement aforesaid, and that he did advise and aid in the commission of the said embezzlement." Obviously the guilt of the defendant, Schmidt, was dependent upon the guilt of the treasurer, Juengling. Schmidt could not have participated, and advised and aided, in the commission of the embezzlement unless Juengling committed it. The court's instruction that "it constitutes embezzlement under the law of this state for the

county treasurer to pay out any money to any of the county officials for salaries except for a period already past" left no question for the jury to determine as to the commission of the crime of embezzlement by the treasurer, Juengling. There was no question but he had made the payments of salaries in advance, but there was a question in dispute whether he had made the payments in good faith. The instruction said in the most emphatic terms that the payments constituted embezzlement. According to the instruction that would be true even though the treasurer made such payments in the very best of faith, and in the absolute and honest belief that he had the power and that it was his duty to do so and that the persons to whom they were paid had the legal right to receive such moneys.

The testimony that the payments were made by the county treasurer in good faith is not so inherently improbable that it can be said as a matter of law that the payments were not so made, and that the moneys so paid were fraudulently appropriated by the treasurer to his own use.

If the county treasurer made such payments openly and avowedly and in the good faith belief that he was authorized to do so, that such payments constituted a proper disbursement of the funds and that the persons to whom they were paid had a legal right to receive them, then there was no fraudulent intent, no fraudulent appropriation, and no embezzlement. People v. Heilemann, State v. Holen and People v. Douglass, supra; 29 CJS pp. 687, 688; note in 87 Am St Rep pp. 26 et seq.; Comp. Laws 1913, § 9938; State v. Kopriva, 51 ND 778, 782, 201 NW 167, 169. See also Blake v. State, 12 Okla Crim Rep 549, 160 P 30, LRA1917B 1261.

In State v. Flath, 61 ND 342, 350, 237 NW 792, 794, this court said: "Under our laws, every person accused of crime is entitled to a fair trial in accordance with the principles embodied in the Constitution and the laws of this state. 'The test is not whether certain legal formulas have been literally complied with, but whether anything has been done or left undone which prejudices the substantial rights of the accused. If a substantial right has been prejudiced a new trial should be had. If not, it is equally the duty of an appellate court to affirm a conviction.' State v. Webb, 36 ND 235, 162 NW 358, 362. In this case something was done which prejudiced the substantial rights

of the defendant and deprived him of that fair trial to which he is entitled under the laws of the state."

This language is equally applicable here. Inasmuch as the error in rulings on evidence, and the error in the instructions to the jury require a reversal, other errors assigned need not be considered, for the questions raised by such assignments are not likely to arise on another trial.

The judgment of conviction and the order denying a new trial are reversed, and the cause is remanded for a new trial.

MORRIS, Ch. J., and BURR, NUESSLE, and BURKE, JJ., concur.