**Elwood F. TIMM, Petitioner and Respondent,**

v.

**STATE of North Dakota and the Highway Commissioner, Appellants.**

No. 7882.

Supreme Court of North Dakota.

Aug. 22, 1961.

Leslie R. Burgum, Atty. Gen., and David L. Milhollan, Sp. Asst. Atty. Gen., for appellants.

Charles G. Bangert, Enderlin, for respondent.

STRUTZ, Judge (on reassignment).

This is a proceeding on application of Elwood F. Timm, as petitioner, who appealed to the district court of Cass County from an order of the State Highway Commissioner revoking his driver's license. The district court, the Honorable Roy K. Redetzke presiding, after hearing, set aside and revoked the order of the State Highway Commissioner and ordered the reinstatement of the petitioner's license to drive. From this order of the district court the Highway Commissioner appeals to this court.

This appeal involves the interpretation of the provisions of Chapter 286 of the 1959 Session Laws of the State of North Dakota, now Chapter 39–20 of the Century Code, which provides that any person who operates a motor vehicle upon the public highways of this State shall be deemed to have given his consent to a chemical test or tests of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. Such test or tests shall be administered at the direction of a law-enforcement officer only after placing such person under arrest and informing him that he is or that he will be charged with the offense of driving or of being in actual physical control of a vehicle on the public highways while under the influence of an intoxicating beverage.

The statute further provides that if the person refuses to submit to chemical testing none shall be given, but that the State Highway Commissioner, upon receipt of a sworn report of the law-enforcement officer that he had reasonable grounds to believe the person arrested had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke such person's license to drive for a period of six months.

The statute also provides that, upon the written request of the person whose privilege to drive has been revoked, the Commissioner shall give such person an opportunity to be heard within ten days after receipt of such request; that such request must be made within thirty days after his arrest. Such hearing shall be before the Commissioner or before his authorized agent, and shall be held in the county where the alleged offense took place. The hearing shall be transcribed, and it shall cover the issues of whether the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor; whether the person was placed under arrest; and whether he refused to submit to such test or tests. The question of whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to such test or tests shall not be an issue at such hearing.

On October 23, 1959, at about 7:15 p. m., Highway Patrolman Donald Peterson observed the petitioner driving on North Dakota Highway No. 46 about three miles west of Leonard in Cass County, North Dakota. The petitioner was driving slowly in an easterly direction and was weaving from side to side on the highway, crossing and recrossing the centerline. The highway patrolman stopped the petitioner and immediately smelled alcohol on his breath. He observed that the petitioner's clothes were soiled; that his eyes were bloodshot, with pupils dilated; and that he staggered when he walked. The officer inquired how much the petitioner had had to drink, and was told by the petitioner that he had had two bottles of beer. The petitioner later raised his estimate to six glasses, and then to six bottles, of beer.

The officer thereupon placed the petitioner under arrest and asked him whether he would submit to an alcohol blood test, which the petitioner refused to do. The record shows that the petitioner was advised that he would be taken to St. John's Hospital in Fargo where the blood test could be made. He was further advised that, if he refused to submit to a test, the Highway Commissioner had the right, under the law, to revoke petitioner's driver's license; and that, if the test of petitioner's blood showed an alcoholic content of less than fifteen-hundredths of one per cent, the charge against him would be reduced. After the petitioner had been taken to the county jail in Fargo, he was asked again, this time in the presence of two witnesses, to submit to a blood test and he refused to do so.

Thereafter, a hearing was had before the agent of the Highway Commissioner, upon the written request of the petitioner, as provided by law. At this hearing, the highway patrolman testified positively that the petitioner had refused to take a blood test to determine the alcoholic content of his blood. The two witnesses who were present when such refusal was made testified positively that the petitioner, in their presence, had refused to submit to a blood test. The petitioner, on the other hand, denied that a blood test was ever mentioned by the patrolman. We believe, however, that the record clearly justifies the finding of the Highway Commissioner that the petitioner did refuse to submit to a blood test to determine the alcoholic content of his blood.

From the order of the Highway Commissioner revoking the petitioner's driving license, the petitioner appealed to the district court of Cass County, the county in which he was driving when the alleged offense was committed. The hearing in the district court was upon the record made before the agent of the Highway Commissioner. After hearing, and after considering the record as it had been made before the agent of the Highway Commissioner, the district court ordered the petitioner's license to be reinstated on the ground that the provisions of the statute in question had not been complied with by the arresting officer. The trial court held that the law

gives to one accused of driving while under the influence of intoxicating beverages the privilege of selecting one of the four tests designated in the statute, and that the highway patrolman, by merely asking the petitioner if he would submit to a blood test, had not clearly pointed out to him his rights under the law; that the highway patrolman, by advising the petitioner that he must submit to a blood test, did not comply with the provisions of the law.

From the order reinstating the petitioner's driving privileges the State Highway Commissioner has appealed, and the question before this court is whether the provisions of the statute were complied with.

Chapter 39–20 of the Century Code is commonly referred to as the "Implied-Consent Law." Section 39–20–01 provides:

> "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this chapter to a chemical test, or tests, of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer only after placing such person * * * under arrest and informing him that he is and will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor."

■ Thus we note that one of the conditions for exercising the privilege or right of operating a motor vehicle upon the public highways of North Dakota is the consent of the one so using the highways to submit to a chemical test or tests of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. This "Implied-Consent" statute is based on reasoning similar to that which has sustained statutes providing for constructive service of process. Such con-

structive or substituted service of process statutes now are in force in most of the States. Since the early decision in the case of Pawloski v. Hess, 253 Mass. 478, 149 N.E. 122, affirmed by the United States Supreme Court in 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, courts generally have held that statutes providing for constructive service of process upon users of the highways by service upon the Secretary of State or the Highway Commissioner, or upon some other person designated in such statute, are valid. These statutes have been upheld on the theory that an operator, by driving his motor vehicle on the highways of the State having such statute, constructively consents to that mode of service. North Dakota has had such a statute for some time (Section 39–01–11 of the Century Code, originally enacted as Chapter 174 of the 1935 Session Laws).

Our "Implied-Consent" statute, Section 39–20–01, which is here under consideration and which provides that any person who operates a motor vehicle upon the public highways of this State shall be deemed to have given his consent to a chemical test or tests of his blood, breath, saliva, or urine for determining the alcoholic content of his blood, is based on reasoning similar to that which has sustained statutes providing for constructive service of process.

■ The use of the public highways is not an absolute right which everyone has, and of which a person cannot be deprived; it is a right or privilege which a person enjoys subject to the control of the State in the valid exercise of its police power. Therefore, in view of the State's power to regulate the use of its highways, statutes may be enacted which declare that the use of the public highways by any person shall be deemed the equivalent of an affirmative consent to a chemical test or tests of the user's blood, breath, saliva, or urine for determination of the alcoholic content of his blood, subject to the other provisions of the statute. The law does not compel the user

to take such chemical tests. If he refuses to do so, however, it provides that he shall forfeit, for a period of six months, the right and privilege which he has been enjoying in the use of the public highways.

The question before this court, therefore, is whether the provisions of this statute were complied with in the instant case. The trial court held that the statute gives to the user of the public highways the choice of one of the four tests mentioned in the statute for determining the alcoholic content of his blood, and that the petitioner was not given this choice by the patrolman. In holding that the petitioner was deprived of a right given to him by the statute, the trial court said:

"From the wording of the statute purporting to give the right of revocation, the driver is deemed to give his consent to 'a chemical test, or tests, of his blood, breath, saliva, or urine.' From this language, the driver is deemed to give his consent to a test of some one of the designated substances, but not all of them. He can comply with the provisions of the statute by selecting the one which is the least burdensome or the least offensive to him. The law enforcement officer confronted Mr. Timm with the choice that he must give his blood for the test or his license would be revoked."

We have carefully considered the trial court's reasoning, and we believe that, under the provisions of the statute in question, the trial court erroneously held that the statute gave to the petitioner the right to choose which of the four tests he would submit to. We believe that, under the statute, any person who operates a motor vehicle upon the public highways of this State gives his consent, subject to the provisions of the statute, to a chemical test or tests of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The exact type of test to be given is to be determined not by the person who is charged with drunken driving but by the officer who knows what test or tests his department is equipped to give. This is the clear meaning of the statute when it provides that the "test or tests shall be administered at the direction of a law enforcement officer."

Any person, by operating a motor vehicle upon the highways of this State, is deemed to have given his consent to a chemical test or tests, and not to just one test of his own choosing as the trial court determined. The trial court's reasoning would make the provisions of this statute worthless and of absolutely no effect in many areas of the State. Very few police stations, especially in the smaller communities, are equipped to give all four of these tests. If the law gave to the person suspected of driving while under the influence of intoxicating liquor the absolute right to choose which of the four tests he was to be given, he could demand one which he knew the local police were not equipped to give and thus he could avoid the effect of the provisions of the law. In some of our rural areas, a person who is suspected of driving while under the influence of intoxicating beverages might know that there is no person within many miles of the place where the offense was committed who is qualified to give the blood test, such as a doctor or a nurse. With this knowledge, if he has the choice, he could demand that a test by drawing of his blood be given. He thus could defeat the purpose of the statute.

The trial court, in holding that a person who is suspected of driving while under the influence of intoxicating beverages has a choice of which of four chemical tests for determination of the alcoholic content of his blood he will submit to, relied upon a decision of the Supreme Court of Utah. In the case of Ringwood v. State, 8 Utah 2d 287, 333 P.2d 943, the Utah Supreme Court had under consideration a statute that is somewhat similar to the North Dakota "Implied-Consent" statute in many respects, but which statute differed in one very im-

portant aspect from ours. The Utah statute, Section 41-6-44.10, U.C.A.1953, provided that any person operating a motor vehicle in that State shall be deemed to have given his consent "to a chemical test of his breath, blood or urine" for determining the alcoholic content of his blood. Our statute, on the other hand, provides that any person operating a motor vehicle upon the public highways of this State shall be deemed to have given his consent to "a chemical test, or tests, of his blood, breath, saliva, or urine" for the purpose of determining such alcoholic content. Thus, in Utah, under the statute in force at the time of the decision in Ringwood v. State, supra, a driver, by operating his motor vehicle on the highways, was deemed to have consented only to a chemical "test," whereas in North Dakota he is deemed to have consented to a "test, or tests." In other words, in North Dakota, by operating his motor vehicle upon the public highways, a driver is deemed to have consented not only to a test, but to "tests," which we believe refers to any of the four tests designated in the statute. Which of these tests is to be used in any case is to be determined by the arresting officer.

As previously pointed out, the law does not compel the highway user to submit to such chemical tests. If he refuses to do so, however, it provides that he shall forfeit, for a period of six months, the right and privilege which he has enjoyed in the use of the public highways of the State.

■ The record clearly discloses that the petitioner refused to submit to a blood test, designated by the patrolman, to determine the alcoholic content of his blood. Because of such refusal, the Highway Commissioner was justified, under the record, in revoking the petitioner's driver's license.

■ In adopting this interpretation, we point to Section 29-01-29 of the North Dakota Century Code which provides that our penal statutes are to be given a liberal interpretation with a view of promoting the

object of the statute, and in the furtherance of justice. The object of the Legislature in enacting Section 39-20-01 was clearly to determine the alcoholic content of the blood of persons who are suspected of operating motor vehicles upon the public highways while under the influence of intoxicating beverages. We believe that a proper interpretation, with a view of promoting the object of the statute, is as above outlined.

Petitioner also contends that Chapter 286 of the 1959 Session Laws, now Section 39-20-01 of the North Dakota Century Code, is unconstitutional. However, the petitioner fails to set forth in what respect the Act is unconstitutional or what provision of the Constitution makes this Act unconstitutional. The petitioner's sole reference to the constitutionality of the statute is in the following words:

"There are many reasons why the Act is unconstitutional, but of course we can't try that issue in these proceedings.

"The Act is so unconstitutional and so foreign to our idea of procedure that this Court, and the District Court should hold the Commissioner to a strict compliance with the provisions of the statute."

■ One who would attack a statute on the ground of its unconstitutionality must point out specific provisions of the Constitution which it violates. State v. Schmidt, 72 N.D. 719, 10 N.W.2d 868; State ex rel. Rausch v. Amerada Petroleum Corp., 78 N.D. 247, 49 N.W.2d 14; State v. Ligaarden, 59 N.D. 475, 230 N.W. 729, 70 A.L.R. 126; Baird v. Rask, 60 N.D. 432, 234 N.W. 651; State ex rel. Sathre v. Board of University and School Lands of North Dakota, 65 N.D. 687, 262 N.W. 60.

Since the matter is not properly before this court, we do not consider the constitutionality of this statute in this proceeding.

We believe the provisions of the law were complied with, and we therefore hold that the trial court erred in ordering the driver's license of the petitioner to be reinstated.

The order of the trial court ordering reinstatement of the petitioner's driver's license is reversed.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.