FRANK PIECHOTTA, Respondent, v. FRED O. FRIED, Appellant.

(181 N. W. 602.)

**Evidence — witnesses — cross-examination of defendant as to arrests for prior similar offenses improper.**

1. In a civil action to recover damages for assault and battery, cross-examination of the defendant with reference to arrests for prior offenses of a similar nature is improper.

**Assault and battery — evidence as to binding over of defendant to district court inadmissible in civil action for damages.**

2. Where the defendant had been arrested on a criminal charge of assault, and upon preliminary hearing before a police magistrate had not testified in his own behalf and had been bound over to the district court, the action of the magistrate in binding him over is inadmissible in a civil action to recover damages for the same assault.

**Appeal and error — cross-examination of party as to prior offenses held prejudicial error.**

3. Where, during cross-examination of a party, counsel persists in pursuing an improper line of examination for purposes of affecting credibility, the questions asked relating to the witness's commission of prior petty offenses. and the rulings thereon, being accompanied by intimations of possible admissibility for certain purposes, it is *held* that the asking of the questions and the pursuit of the line of examination was prejudicial error.

Opinion filed December 6, 1920. Petition for rehearing filed January 22, 1921.

Appeal from the District Court of Stutsman County, *Coffey,* J.
Reversed and remanded.

*George W. Thorp* and *Harry Rittgers,* for appellant.

"Damages may be uncertain, either as to their existence, or their nature, or in respect to the cause from which they proceed." 17 C. J. 754, § 87.

"Where it is not shown with reasonable certainty that the harm or loss resulted from the act complained of, there can be no recovery of compensatory damages therefor." 17 C. J. 755, § 89; West Chicago, etc. Co. v. Foster (Ill.) 51 N. E. 690; Kethledge v. City (Mich.) 146 N. W. 164.

"Another principle of proximate cause which seems to be well established is that an accident or injury cannot be attributed to a cause unless, without the operation, it would not have happened." Ring v. Cohoes, 77 N. Y. 83; Taylor v. Yonkers, 105 N. Y. 202, 11 N. E. 642; Ayres v. Hammondsport, 130 N. Y. 665, 29 N. E. 265; Grant v. R. Co. 133 N. Y. 657, 31 N. E. 220.

There is no evidence in the case at bar of the earning capacity of plaintiff or that his earning capacity, if he had any, was impaired. York v. Co. (N. D.) 170 N. W. 312; Wagoner v. Boudell (N. D.) 164 N. W. 147; Mark v. Frick (Minn.) 147 N. W. 279.

A cross-examination is proper though it calls for facts not testified to on direct examination but relating to the same subject-matter and bearing upon the main facts toward which the examination in chief was directed, facts which give to the direct testimony the effect of false testimony. Hogan v. Klabo, 13 N. D. 319; 40 Cyc. 2482, 2483.

"The right of cross-examination should not be abridged, especially where the witness is the opposite party and is testifying to make out his case." 40 Cyc. 2476, 2477.

*S. E. Ellsworth,* for respondent.

"It must be apparent at first blush that the damages are glaringly excessive. Likewise, if the verdict is manifestly inadequate to compensate plaintiff for the damage sustained, it will be rectified or set aside for insufficiency." 3 Cyc. 1109; Brown v. Evans, 17 Fed. 917; Winston v. Terrace (Wash.) 138 Pac. 673.

In the following cases both of which were actions in damages for assault and battery, courts have held an award of $2,000, the sum awarded as compensatory damage in this case, to be not excessive. Wohlenburg v. Melchart (Neb.) 53 N. W. 982; Barr v. Post (Neb.) 77 N. W. 123.

BIRDZELL, J. This is an action to recover damages for assault and

battery. The jury returned a verdict in favor of the plaintiff for $2,000 compensatory damages and $2,000 exemplary damages, and judgment was entered for $4,000 and costs. The appeal is from the order of the trial court denying the defendant's motion for a new trial.

Some time during the year 1919 the defendant obtained, by trade with the Bank of Clementsville, some notes which had been given by the plaintiff amounting to about $1,200, and which were secured by a chattel mortgage. There were also some other transactions between the parties whereby the plaintiff had become indebted to the defendant in a larger sum. In the early spring of 1920, the indebtedness being past due, the parties discussed their financial matters somewhat, and Fried, the defendant, endeavored to persuade the plaintiff to execute a chattel mortgage as security therefor. After some prior negotiations regarding this mortgage, Fried and one Dresser, his employee, went out to the plaintiff's home, a short distance from Spiritwood, North Dakota, on May 1, 1920, for the purpose of effecting a settlement. Fried claims that, before going on this mission, threats of intended violence toward him on the part of the plaintiff, Piechotta, had been communicated to him, and that being fearful that there would be some attempt to carry out these threats, he took with him a part of a revolver, which he obtained from his hardware store in Spiritwood. The piece of revolver consisted of an apparently complete automatic pistol, lacking a sliding piece at the top which contained the hammer and operated as a shell extractor. Its efficiency, according to Fried's claim, would be limited to frightening the plaintiff in case of an attempted assault by the latter. Fried and Dresser arrived at the plaintiff's place about 1 or 2 o'clock in the afternoon, and, after some discussion of the proposed settlement of their business transactions, the altercation which gave rise to this action took place. It is not necessary to detail the conflicting evidence concerning what happened at the time.

The jury has apparently adopted the plaintiff's version, in which he was corroborated by his wife, to the effect that the defendant was the aggressor; that he committed the first assault by drawing the gun from his pocket and thrusting it at the plaintiff with the muzzle from 2 to 4 inches from his face; that the plaintiff took hold of the defendant's hand in such a manner as to remove the gun from this threatening position, and otherwise sought to prevent injury to himself by holding the

plaintiff from him. Notwithstanding his efforts, however, he emerged from the conflict with his face cut or scratched and bleeding, his eyes swollen, and at least one eyelid lacerated. The evidence is conflicting as to whether Dresser separated the belligerents or whether he interceded to the extent of holding the plaintiff's hands behind him while the defendant administered additional punishment. After the altercation the plaintiff and his wife drove to Jamestown (plaintiff driving the car part of the way), where the plaintiff had his wounds dressed, caused the defendant to be arrested, and attended the preliminary hearing, which was partially completed that day, before Police Magistrate Murphy.

There are twenty-eight specifications of errors of law occurring during the trial. In view of the conclusion at which the court has arrived concerning certain of these specifications, it is not necessary to consider the remainder, as it does not appear that similar questions may arise upon a retrial of the case. The appellant complains of certain rulings of the court upon the admission and exclusion of testimony, and contends that they prevented a fair trial. In order to present the rulings in such form a just estimate as to their probable effect may be made, it is necessary to set forth extracts from the transcript. The following is part of the cross-examination of the defendant:

Q. Well, Mr. Fried, during the past few years, is it not true you have been drinking or have been in the habit of drinking heavily, taking intoxicants frequently?

Mr. Thorp: That is objected to as an improper method of impeachment or cross-examination.

The Court: Objection sustained.

Q. Isn't it true that on numerous occasions here in Jamestown, at Spiritwood and elsewhere, you have been guilty of disorderly conduct and assaults upon the person of other people?

Mr. Thorp: That is objected to for the reason that it has no connection with the case at issue, it is conjectural and scurrulous, not a proper method of impeachment, stating no specific acts.

The Court: Objection sustained.

Mr. Thorp: We except to the question itself as prejudicial.

Q. I will ask you, Mr. Fried, if you are acquainted with a man by the name of George Lund, who was formerly at Spiritwood?

A. Why, I knew of him, yes.

Q. Isn't it true that you were arrested upon a warrant issued from the justice court of this county for an assault upon the person of George Lund?

Mr. Thorp: That is objected to as a collateral matter—not the best evidence, scurrilous, incompetent, irrelevant, and immaterial and an improper subject of cross-examination.

The Court: Objection sustained.

Mr. Thorp: We except to the question.

Q. Is it not true that you were taken before the justice of the peace of this county, and found guilty of assault upon George Lund and fined for the offense?

Mr. Thorp: That is objected to as not the best evidence, calling for hearsay—having no tendency to impeach this witness upon the ground that he has been convicted of an infamous crime; a misdemeanor, if one had been committed, is not an infamous crime; is a collateral issue and incompetent, irrelevant, and immaterial in a civil case anyway.

The Court: Objection sustained.

Q. Mr. Fried, I will ask you if on the 31st of March or about that time of the present year—may have been a little before the time of the assault you are charged with here, you were not arrested here in Jamestown, upon a warrant issued by Justice Murphy for a breach of the peace?

Mr. Thorp: In the light of the ruling of the court on similar questions, on this occasion and at this time, it appearing that the questions were asked for no other reason than to prejudice this jury, we first except to the question as prejudicial itself and make the same objection to the question as was made to the first question.

Mr. Thorp: We object to the argument of any purported facts before this jury, as prejudicial.

The Court: I hardly think it is material in this case, as a specific act is being charged here.

Objection sustained.

Mr. Ellsworth: Now what would your holding be, that he could be asked as to the particulars of the specific assault, within the heart. He claims that he was incapacitated by physical deformity.

Mr. Thorp: That is not what he said; he was incapacitated in making the assault. The purpose, under the rules of evidence in introducing the physical condition of the parties, is for the reason that the jury can take into consideration, the physical incapacity of the parties, in connection with the other parties in the case. He wasn't asked anything about whether he could fight or couldn't fight, so that the jury could see these two men in connection with the facts that are in evidence in this lawsuit.

The Court: I think that evidence is admissible in this case under the allegation of forcibly committing the assault. The question of the physical condition, I will admit under that theory. Of course, it has directly to do with the question of force and has also to do with the question of oppressiveness,—oppression is charged in the complaint. I do not know that there is anything to rule on at this time.

Mr. Ellsworth: In order to bring the question fairly before the court I will ask another question.

Q. I will ask you to state whether or not on or about the 31st of March of this year you were not intoxicated at the café known as the Chop Suey here in Jamestown, and at that time, guilty of disorderly conduct, consisting, among other things, of an indecent assault upon a young lady employed there as a waiter, for which you were afterwards arrested and brought before a magistrate of this city.

Mr. Thorp: That is objected to as incompetent, irrelevant, and immaterial; with reference to the arrest, it is not the best evidence, if there was any arrest. It is a collateral issue having no connection with the case herein involved, not being an infamous crime, by a regularly entered judgment of a court of competent jurisdiction, and a collateral issue, having no tendency to impeach this witness as to his veracity.

The Court: If testimony was offered to show that this defendant was incapacitated to exercise force, it wouldn't be competent to inquire if he had used force in committing assaults on other people.

Mr. Thorp: It is objected to upon the further ground that an arrest and conviction for a breach of the peace is not admissible as impeachment of the credibility of the witness or for any other purpose in this lawsuit.

The Court: I will sustain the objection. I wouldn't receive any

46 N. D.—40.

evidence upon that theory in this case—if received at all it would be received on the theory that the evidence was offered in the first place to show that this man was incapacitated to commit an assault, and these other evidences of an assault having been committed might throw some light upon the question of receiving it.

Mr. Ellsworth: We offer the evidence for that purpose, your Honor.

Mr. Thorp: We renew our objection for all of the reasons stated.

The Court: I will overrule the objection and allow the evidence on the theory already stated by myself.

Mr. Thorp: This was an indecent assault.

The Court: This is an indecent assault—Read the question, Mr. Reporter.

[Question read:]

The Court: I will sustain the objection upon the ground that it does not bear upon his physical ability.

[Mr. Ellsworth continues cross-examination.]

Q. Were you not, Mr. Fried, afterwards arrested and brought before the magistrate who issued the warrant in that case, and convicted of disorderly conduct and a breach of the peace on the day aforesaid?

Mr. Thorp: That is objected to on the ground that in the first place this was a violation of a city ordinance, if it ever happened, and in the next place it shows on its face that it was only a misdemeanor, and in the next place it is not the best evidence for any purpose, and is a collateral matter, and had no bearing on the credibility of this witness, and it is immaterial.

The Court: I think it is immaterial, and I will sustain the objection.

∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙

Q. The same day this assault was committed, were you not arrested here upon a warrant issued by magistrate of this city, for the offense of carrying concealed weapons?

Mr. Thorp: The question itself is prejudicial, but I will state to the counsel that the complaint was made by the plaintiff in this case himself, and the arrest of the person for a preliminary hearing is in no sense the impeachment of the witness, and is immaterial. We will admit it, he was arrested for this same assault by the plaintiff.

Mr. Ellsworth: You will admit that?

Mr. Thorp: Yes.

Mr. Ellsworth: Will you further admit that he is bound over to the district court by the magistrate on that charge?

Mr. Thorp: If you will stipulate all the facts, I will.

[Mr. Ellsworth continues cross-examination.]

Q. After being arrested on that charge and having a hearing before Magistrate Murphy here in Jamestown, were you not bound over to the district court, to answer to the charge of carrying concealed weapons on that day?

Mr. Thorp: That is objected to as incompetent, irrelevant, and immaterial, having no tendency to impeach this witness—that an order of the police magistrate, if any was made, not being a conviction, but being a hearsay.

The Court: This is the same cause of action brought here. Objection overruled.

A. I think I was—I didn't testify though.

Q. You heard Mr. Dresser testify that day, didn't you?

Mr. Thorp: That is objected to as immaterial, prejudicial.

The Court: Objection overruled.

A. Yes, I heard him testify.

The line of cross-examination disclosed by the portions of the transcript above quoted must be justified, if at all, upon one or both of the following grounds: That it is directed to matters affecting the credibility of the defendant as a witness; or that it tends to prove that the defendant committed the assault in the case at bar. We are firmly of the opinion that this line of cross-examination is not proper for either of these purposes. The rule that a witness may be cross-examined with reference to his prior conviction of crimes had its origin in the statutes removing disqualification by reason of such convictions. With the disqualification removed, persons who were convicted of infamous crimes could testify in court, but it was deemed proper to show by cross-examination or by the production of the record that they had at a former time been convicted of crime. In this way matters which were originally thought sufficiently grave to altogether preclude the giving of testimony were allowed to be shown for the effect on the credibility of the witness. Neither simple assault, breach of the peace, nor other offense implied by the questions asked in the case at bar, comes within

the common-law designation of infamous crime, such as would have disqualified a witness. Neither do such offenses have sufficient connection with the quality of veracity to make the line of inquiry appropriate for impeachment. Such questions have a strong tendency to affect the jury prejudicially against the defendant, and are of little, if any, value as affording a standard for measuring the reliability of his testimony. Such a question should not have been asked in the first instance, and, after an adverse ruling, the line of examination should not have been pursued to the extent of inquiring concerning other offenses of similar character. This only added to the probability of prejudice.

Some of the questions are also open to the objection that they do not inquire as to whether the defendant had been convicted, but are limited by asking whether or not he had been arrested or whether he had been held to answer to district court upon preliminary hearing. This form of question is generally recognized as improper. State v. Kent (State v. Pancoast) 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052; State v. Nyhus, 19 N. D. 326, 27 L.R.A.(N.S.) 487, 124 N. W. 71; 5 Jones, Ev. § 838. While the respondent contends that it was proper to show the action of the magistrate in holding the defendant upon the preliminary hearing as some proof by way of admission (as the defendant did not testify) or otherwise of the commission by him of the assault, we are unable to so regard it. After a defendant has been convicted in district court, the record of his conviction is not admissible in a civil action for damages arising out of the same assault to prove the fact of the assault. 3 Cyc. 1098; Caverno v. Jones, 61 N. H. 623. Much less would the action of a magistrate at a preliminary hearing be admissible.

While it is true that the district court sustained objections to questions, except as they related to the criminal charge growing out of the assault in question, the rulings were accompanied by intimations of doubt as to the relevancy of the evidence for certain purposes, and the objectionable line of cross-examination was pursued to an extent that is unjustified as an effort to obtain a definite ruling of the court. It is apparent to us that the probable effect was prejudicial to the defendant. It is difficult indeed to see why certain questions were asked, unless for their prejudicial effect. For instance, it appears that after

the court had ruled that evidence of other assaults might be admitted on the questions of force and oppressiveness, and had concluded by stating that there was nothing to rule on at the time, plaintiff's counsel immediately framed a question in which he asked the defendant if he had not, at a time stated, been intoxicated and guilty of disorderly conduct, consisting, among other things, of an indecent assault upon a young lady employed as a waitress. This is the first mention of indecent assault. Such an assault clearly has no bearing upon the "question of force" in the commission of the assault upon the plaintiff. Up to this point, plaintiff's counsel had been treading upon thin ice, and we are at a loss to see why he would thus attempt to secure an extension of the already doubtful, if not erroneous, ruling by suggesting a more odious assault, unless it was desired that the improper matter be thus indirectly brought to the notice of the jury.

Being of the opinion that the probable effect of the line of questions referred to was prejudicial to the defendant and prevented a fair trial, the order appealed from is reversed and the case is remanded for a new trial.

CHRISTIANSON, Ch. J., and BRONSON and ROBINSON, JJ., concur.

GRACE, J. I concur in the result.

On Petition for Rehearing Filed January 22, 1921.

BIRDZELL, J. Counsel for respondent has filed a carefully considered petition for rehearing, in which he has collated the cases decided in this jurisdiction bearing upon the scope of the cross-examination of witnesses. These cases are brought to the attention of the court by way of supporting the contention, forcibly advanced, that the liberal rule of cross-examination previously adhered to is departed from in the decision of this case. See Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003; State v. Kent (State v. Pancoast), 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052; State v. Apley, 25 N. D. 298, 48 L.R.A.(N.S.) 269, 141 N. W. 740, and cases therein cited. See also Engstrom v. Nelson, 41 N. D. 530, 171 N. W. 90. This court does not wish to be understood as in any way qualifying the previous holdings referred to. We think it sufficiently appears from the portions of the transcript quoted

in the original opinion that the trial court at the outset, in the exercise of discretion, ruled in such a way as to exclude evidence having a tendency merely to degrade the defendant and to show him to have been guilty of some petty misdemeanors. This evidence, if admitted, would have had so little bearing upon the witness's credibility that this court could not say that its exclusion was prejudicial error; but, on the other hand, it would rather appear that the trial court had properly exercised its discretion in thus controlling the cross-examination. Following these first questions, plaintiff's counsel asked defendant if he had not been *arrested* on a warrant issued by a justice for an assault upon the person of George Lund. This question was clearly improper for the reasons stated in the previous opinion; namely, that it did not inquire whether or not the defendant had committed the assault or been convicted of it. Then this was followed by the question as to whether or not he had not been found guilty and fined for this same assault. Again the court exercised its discretion as in the first rulings, and sustained the objection to the question. Then respondent's counsel asked another question of exactly the same character; that is, as to whether or not the defendant had not been *arrested* upon a warrant issued by Justice Murphy for a breach of the peace. After the objection to this question was sustained counsel suggested the possible admissibility to prove capacity for committing the assault, since the defendant had claimed that he was incapacitated by physical deformity. Then, after the court had intimated that he would admit evidence of other assaults on the question of physical condition or capacity to use force, and also on the question of oppressiveness, respondent's counsel framed a question apparently embodying an instance not covered by any of the previous questions, and the court ultimately excluded that, and we think properly so, upon the record made up to that time.

For the reasons stated in the principal opinion and reiterated here, we think the rulings on the cross-examination concerning the other offenses were proper. We do not hold, however, that a witness may not be fully cross-examined as to his prior conviction of crime, or as to his or her prior disreputable conduct generally, such as living in an open state of adultery or being a prostitute, a professional gambler, or engaged in operating a saloon without a license, as has been held in the cases referred to by counsel. The rule in this jurisdiction is the liberal,

discretionary rule. See cases supra and Wigmore, Ev. §§ 980, et seq.

In this case punitive damages amounting to $2,000 were awarded by the jury, and the case is such that punitive damages may be recovered. This makes it all the more important to exclude from the consideration of the jury matters having a strong tendency to induce a conviction in their mind that the defendant merits punishment on account of his conduct upon other occasions. All evidence that would tend strongly in this direction, and be of only slight value at best as bearing upon credibility, should, therefore, be excluded. We are of the opinion that the record in this case shows that an amount of prejudicial matter, beyond what was necessary to secure a clear ruling by the court, was indirectly presented to the jury, and we think the surest corrective measure is a new trial.

The petition for rehearing is denied.

CHRISTIANSON, Ch. J., and BRONSON and ROBINSON, JJ., concur.