**Fred BISCHOFF, Individually, and as the surviving husband of Mary Bischoff, Plaintiff and Respondent,**

v.

**Simon KOENIG, Defendant and Appellant.**

**No. 7793.**

Supreme Court of North Dakota.

Dec. 30, 1959.

Palda, Palda & Peterson, Minot, for appellant.

Friederich & Ziegler, Rugby, for respondent.

SATHRE, Chief Justice.

The plaintiff, Fred Bischoff, brought this action against Simon Koenig and Ingval Vangsnes to recover damages growing out of a collision between a car of the defendant Koenig in which plaintiff and his wife were guest passengers, and a car driven by the defendant Vangsnes. The plaintiff was injured and his wife was killed. The case came on for trial at Rugby, North Dakota, December 12, 1957. A recess was taken to December 16, 1957, at which time a jury was selected and sworn to try the case. Thereafter the attorneys for the plaintiff announced that a settlement had been had of the claim of the plaintiff against the defendant Vangsnes and that the trial was to be continued against the defendant Simon Koenig alone. The attorney for the defendant Koenig moved for a continuance on account of surprise, and after some discussion between the court and counsel, court recessed to March 4, 1958.

When the court reconvened on March 4, 1958, counsel for the defendant moved for a change of venue or for dismissal of the action without prejudice on the grounds that the jury was selected in the presence of the entire panel, that the jurors lived in the community, had read the newspapers that had been published for a period of more than two months, and that therefore the members of the panel could not do justice to either party. The motion was denied.

The court thereupon dismissed the jury that had been impaneled and sworn on December 16th and a new jury was selected and sworn to try the case from the panel that had been in recess since December 16. The plaintiff filed an amended complaint in which Simon Koenig alone was made the defendant. The defendant renewed his motion for a continuance upon the same grounds the original motion for a change of venue was made. The motion was denied.

The amended complaint alleges that the plaintiff and his wife were riding as gratuitous guests in the car of the defendant and that about the hour of 7 o'clock P.M. on a township road at approximately 7½ miles west and 3 miles south of Rugby while the plaintiff and his wife were gratuitous guest passengers riding in defendant's automobile driven by the defendant on said township road, said defendant was intoxicated and operated his car in a careless, reckless, unlawful and grossly negligent manner, and without care or caution and without heed for the safety of himself or his passengers, and that as a direct and proximate result of the gross negligence of the defendant, defendant's car collided with a car driven by one Ingval Vangsnes and that the wife of the plaintiff was killed by the force of the collision and the plaintiff suffered bodily injuries and the loss of one eye. Damage is demanded in the sum of $19,500 and costs.

The answer denies generally the allegations of the complaint and alleges that if plaintiff suffered any damages the same were due to his own contributory negligence. A jury trial was had and a verdict was rendered in favor of the plaintiff. Judgment was entered for the plaintiff upon the verdict and from this judgment the defendant appealed.

There is no material dispute as to the facts in the case. The plaintiff and defendant are farmers and neighbors residing approximately 7 miles west and 3 miles south of Rugby, North Dakota. On the morning of February 13, 1956, the defendant and his wife decided to drive to Devils Lake, North Dakota, and they invited the plaintiff and his wife to accompany them in defendant's car. The plaintiff and his wife accepted the invitation and the parties left in defendant's car shortly before 11 o'clock. They drove to Devils Lake where they spent a considerable portion of the afternoon. On their return trip they stopped a short time at Rugby where defendant purchased gasoline for his car. They then drove south on a graveled township road where the defendant's car collided with a car driven by Vangsnes as referred to herein. Plaintiff's wife was killed in the collision and both plaintiff and defendant were injured and were hospitalized. While at Devils Lake the plaintiff and defendant each had two drinks of Vodka Sour and on their return trip each had two drinks of Vodka Sour at Rugby. There is however no evidence in the record of any conduct on the part of either the plaintiff or the defendant from which intoxication could be inferred.

During the examination of the plaintiff on direct examination by his counsel he was asked the following question:

"The funeral and burial expenses for your wife, Mary was paid by whom?"

The plaintiff answered: "By Simon's Insurance."

Counsel for defendant thereupon moved for a mistrial on the ground and for the reason that the plaintiff had testified that Simon Koenig's insurance had paid for the medical bills and funeral expenses. The motion was denied.

Douglas Martin, a highway patrolman, was a witness for the plaintiff. He was permitted, over objection by the defendant, to testify as an expert that alcohol will retard the reflexes or reaction time of the driver of an automobile and impair his driving ability. He testified further that he arrived at the scene of the accident about an hour after it occurred. He described the position of the Koenig and Vangsnes cars on the road as he found them after the collision. He gave the measurements that he had taken of the distance of the two cars from each other, as well as the distance of each car from the west edge or ditch of the road. Upon examination by plaintiff's attorney he testified as follows:

"Q. (By Mr. Friederich) Now, Mr. Martin, in the course of the investigation that you made, do you attempt to determine the position of the vehicles on the road just prior to the accident? A. Yes.

"Q. (By Mr. Friederich) Did you make that type of an investigation and a determination of this accident? A. Yes.

"Q. Are you prepared to state with reasonable certainty, Mr. Martin, the position of these vehicles upon the highway just the moment before they collided?

"Mr. Palda: Answer yes or no, please. A. Yes.

"Q. (Mr. Friederich) Will you proceed, Mr. Martin, by the use of that easel, to draw a sketch which conforms to the information that you obtained from your investigation and which shows the position of these ve-

hicles upon the highway just momentarily before the collision?

"Mr. Palda: That is objected to as calling for a conclusion of the witness, an opinion of the witness, invading the province of the jury.

"The Court: Well, by this sketch he is going to show the physical facts as they existed at that highway."

After further examination by plaintiff's attorney and objections by the defendant which were overruled, the Court, addressing the witness, said:

"The Court: You go ahead and make your sketch. (Whereupon, witness leaves stand and faces easel.)

"Mr. Palda: While Mr. Martin is doing that have the record show an easel has been placed before the jury and Doug Martin, the Highway Patrolman, is now drawing on a paper located on such easel.

"The Court: Very well, the record will so show."

Plaintiff's counsel:

"Q. This diagram, Mr. Martin, that you have drawn is based upon your investigation and the notes and information that you obtained, and is a fair representation of the position of the vehicles just before the accident, isn't that correct, Mr. Martin?

"Mr. Palda: Just a minute, Mr. Martin. That is objected to as incompetent, irrelevant and immaterial, calling for a conclusion of the witness, an opinion of the witness, and it is invading the province of the jury."

The diagram or sketch drawn by the patrolman was marked plaintiff's exhibit 6 and offered in evidence. The defendant objected to its introduction upon the following grounds:

"Mr. Palda: Exhibit 6 is objected to on the ground it's incompetent, ir-

relevant and immaterial, speculative, and based on conjecture. It's opinion and conclusion of the witness, and invades the province of the jury.

"The Court: It undoubtedly is subject to some of those objections, but I am going to overrule the objection and admit the exhibit. It will be admitted."

Exhibit 6 is a diagram drawn on an easel, before the jury by the highway patrolman Martin. He testified that it was his conclusion that exhibit 6 was a fair representation of the position of the Koenig car and the Vangsnes car the moment before the collision, and that he arrived at his conclusion from the position in which he found the cars an hour after the collision. He stated that there were no skid marks by the cars, and if there had been skid marks they were completely obliterated by the people walking back and forth over the area of the accident before he arrived at the scene. On cross-examination Martin testified as follows:

"Q. Now in preparing exhibit 6, that is your drawing up there. * * * A. Yes.

"Q. Exhibit 6 represents how you believe the cars were at the moment of the impact, is that correct? A. Yes.

"Q. So your opinion has been placed in your mind in order for you to prepare exhibit 6, does it not? A. Yes.

"Q. Because you do not purport to tell us that you ever saw these two cars in this position as represented by exhibit 6? A. No, I did not.

"Q. And did you talk to anybody that saw them in that position? A. No, Sir."

When the plaintiff had rested the defendant moved for a new trial on the ground that the plaintiff had brought the question of defendant's insurance into the case,

which motion was denied. Defendant further moved for a directed verdict for dismissal of the action, which motion also was denied.

At the close of the case when both parties had rested the defendant renewed his motion for a mistrial on the ground that plaintiff had brought the matter of defendant's insurance before the jury, and upon the further ground that the highway patrolman was permitted over objection to testify as to his opinions and conclusions, contrary to law. The motion was denied.

The case was submitted to the jury and a verdict was rendered in favor of the plaintiff, and judgment was entered upon the verdict.

Thereafter in due time the defendant made a motion for a new trial upon the grounds urged in his motions for a mistrial and for a directed verdict for a dismissal of the action. The motion was denied, and the defendant appealed from the order denying his motion for a new trial and from the judgment.

It is the contention of the defendant that the trial court erred in refusing to grant a new trial on the ground that the plaintiff brought the matter of defendant's insurance into the case.

■ The rule is practically uniform in actions involving motor vehicle accident cases that where the defendant is protected by liability insurance, statements with reference thereto should not be made before the jury during the trial of the action. The general rule is stated in Blashfield Cyclopedia of Automobile Law, Permanent Edition, Vol. 9C, Sec. 6291, pages 472–474, 475 as follows:

"The general rule of almost uniform enforcement in motor vehicle accident cases is that the jury should not be informed of the fact that the defendant is protected by liability or indemnity insurance, either by the voir dire examination of jurors, the testimony of

witnesses or statements of counsel during the trial, and it is the duty of the presiding judge to guard against prejudicial references to insurance. * * *

"Although there are exceptions, the general rule is that the placing of such information before the jury is prejudicial, and requires the declaration of a mistrial, or requires a reversal."

In the case of Beardsley v. Ewing, 40 N.D. 373, 168 N.W. 791, 794, the defendant, a physician and surgeon, was asked whether he was insured against loss in malpractice cases. The question was objected to and the objection was sustained. The question was not answered and was held not to be prejudicial to the defendant. However, in the opinion this court said:

"The inherent vice of the objectionable questions lies in their probable effect upon the minds of the jury. The consideration as to whether or not the defendants are insured is entirely foreign to the question of negligence; but the fact must be conceded to have a bearing upon the interest of the defendants in the outcome, and to belong to that class of matter which it is proper ordinarily for the jury to consider in weighing the testimony of witnesses. Yet the disadvantage due to its prejudicial tendency is supposed to outweigh the value of the evidence as affecting the credibility and it is for this reason excluded. Wigmore, Ev. § 969. See also Iverson v. McDonnell, 36 Wash. 73, 78 P. 202; Stratton v. C. H. Nichols Lumber Co., 39 Wash. 323, 81 P. 831, 109 Am.St.Rep. 881; Lowsit v. Seattle Lumber Co., 38 Wash. 290, 80 P. 431; Wildrick v. Moore, 66 Hun 630 [49 N.Y.St.Rep. 919] 22 N.Y.S. 1119. In fact, the rule of exclusion is so well understood in the profession that there seems but little excuse for even asking such questions."

In the instant case the court instructed the jury not to consider the matter of insurance; but the jury had knowledge of the fact that the defendant had liability insurance, and that knowledge may well have influenced their judgment in arriving at a verdict notwithstanding the court's instruction. It must follow that the trial court erred in refusing to grant defendant's motion for a mistrial.

The defendant next contended that the trial court erred in permitting Martin, the highway patrolman, over sufficient objection by defendant to give opinion and conclusion testimony as to the position of the two cars immediately before they collided. There was testimony in the record showing where the two cars came to rest after the collision and the distance between them, the distance of each car from the west ditch of the road; the condition and the width of the road. A similar situation was before this court in the case of Fisher v. Suko reported in 98 N.W.2d 895, 900. The plaintiff in that case suffered personal injuries while a passenger in a car owned and driven by one Knoepfle, which collided with car driven by Reinhold Suco, whose executor was the defendant. A highway patrolman, a witness for the plaintiff, was permitted over objection by defendant to give his opinion as to where the collision between the two cars occurred. In that case this court said:

"The facts and circumstances disclosed by the evidence are such that it may be assumed the jury was capable of understanding them and arriving at its own conclusion as to where the accident happened without the aid of the opinion of the highway patrolman. Where such a situation affirmatively appears there is no foundation for the expression of an opinion by an expert as to the point of impact. The trial court erred in overruling defendant's objections and denying the motion to strike the conclusion of the witness on

the ground that it was elicited without sufficient foundation."

■■ In the instant case the physical facts were in evidence. The jury was the trier of the facts, and the evidence was such that the jury was as well qualified as the patrolman to determine the position of the cars at or immediately before the collision. The admission in evidence of exhibit 6 and the opinion and conclusion testimony of the highway patrolman was without foundation and therefore constitutes prejudicial error.

Because of the errors of law committed at the trial as pointed out therein, the order denying defendant's motion for a new trial and the judgment must be reversed and a new trial is granted.

MORRIS and BURKE, JJ., concur.