David M. KRESEL, Plaintiff and Appellee,

v.

Roger H. GIESE, Defendant and Appellant.

Civ. No. 9089.

Supreme Court of North Dakota.

June 24, 1975.

Murray, Mack, Moosbrugger & Leonard, Grand Forks, for plaintiff and appellee; argued by John Moosbrugger.

Bruce E. Bohlman, Special Asst. Atty. Gen., for Unsatisfied Judgment Fund, Grand Forks, for defendant and appellant; argued by Bruce E. Bohlman, Grand Forks, and John Schneider, Senior Law Student.

ERICKSTAD, Chief Justice.

The defendant, Roger H. Giese, appeals from a judgment entered against him in the sum of $11,810 plus interest and costs and from the order denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

As we must view the evidence upon an appeal of an order denying such a motion in the light most favorable to the verdict, and as the parties do not disagree on the facts generally, we shall accept, except where disputed, the facts as they are stated in the brief filed on Kresel's behalf.

On the evening of January 28, 1972, Roger Giese decided to drive his automobile to his apartment which is located south of the Grand Forks K–Mart store in Grand Forks. He and his friend left for the apartment in his 1963 Chevrolet automobile. Leaving University Avenue, they traveled south upon South Washington Street until turning onto the service road which lies west and parallel to South Washington Street at 17th Avenue South. They proceeded south on the service road until Giese turned his auto into the K–Mart parking lot at a point east and south of the K–Mart sign and south of the Bonanza Sirloin Pit. At this point, Giese drove his vehicle in a southwesterly direction diagonally across the K–Mart parking lot. Approximately 85 feet west of the service road, the left front fender of Giese's auto collided with the rear quarter panel on the driver's side of a 1965 Dodge Dart which was driven by Kresel.

Prior to the collision, Kresel had been shopping in the K–Mart store and had left the K–Mart area by driving east on a concrete lane which intersects with the service road parallel to South Washington Street. This particular lane extends east and west and if extended westerly, would intersect with the doors of the food department of the K–Mart store. To the north of this area is an asphalt parking area delimited by a parallel concrete entrance lane which extends past Budget Drug. To the south are numerous asphalt parking areas interspersed with parallel concrete exit lanes.

About 75 feet north of the lane which Kresel was using in leaving the parking lot was a snowbank about 10 feet high. The snowbank extended from 25 feet west to 100 feet west of the service road paralleling South Washington Street.

At 8:39 p. m. and about 100 feet west of the service road, Kresel observed a car approaching diagonally from his left from behind the snowbank. A second or two later and after traveling approximately 15 feet, the approaching car struck the left rear quarter panel of his car. The impact spun Kresel's car around so that it came to rest facing in a westerly direction. Kresel's vehicle incurred damages totaling $400 to $500.

The parking lot at the time of the collision was generally icy with intermittent patches of clear asphalt and concrete. This

was a condition prevalent throughout the city of Grand Forks at that time.

After the accident, Giese admitted at the scene of the accident that the accident was his fault. He asked Kresel not to call the police, and requested that he come to his place where he would pay for the damages. The police, however, were called by one James Bies who was a passenger in the Kresel vehicle.

On several occasions thereafter, Kresel contacted Giese in an attempt to secure payment for the damages to his automobile. Each time Giese affirmed his intentions to pay the damages, but ultimately told Kresel to forget it since he didn't have any money.

At the time of the collision, Kresel was knocked about in his automobile and suffered therefrom injuries to his head, neck, and back which caused him to have headaches, a stiff neck, and numbness in the arms and legs. He testified that his headaches occurred three or four times a week and that he took aspirin to relieve the pain, that normal work initiated the headaches, that physical exertion aggravated them, and that car trips increased them. His wife substantiated his testimony relative thereto.

A. E. Culmer, Jr., a medical doctor, testified that the plaintiff's injuries from the accident caused him permanent partial disability of 10 percent to the cervical spine and of 5 percent to his body as a whole. He further testified that the type of injuries sustained were consistent with the kind of accident in which Kresel was involved.

It is Giese's initial contention on appeal that the trial court should have granted his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on the ground that the evidence was insufficient to justify the verdict in that the evidence did not support the jury's finding that he was negligent. We recently addressed ourselves to this question in Waletzko v. Herdegen, 226 N.W.2d 648 (N.D.1975), wherein we said:

"As to the trial court's denial of Waletzko's motion for judgment notwithstanding the verdict or in the alternative for a new trial, the credibility of the witnesses and the weight to be given their testimony are questions of fact for the jury to determine. In determining the sufficiency of the evidence to sustain the verdict of the jury, we must view the evidence in the light most favorable to the verdict. Johnson v. Auran, 214 N.W.2d 641 (N.D.1974); Watkins Products, Inc. v. Stadel, 214 N.W.2d 368 (N.D. 1974); Lembke v. Unke, supra [171 N.W.2d 837 (N.D.1969)]; Frank v. Daimler-Benz, supra [226 N.W.2d 143 (N.D. 1974)]. Our review of the facts is limited to consideration of whether there is substantial evidence to sustain the verdict; if there is, we are bound by the verdict. Watkins Products, Inc. v. Stadel, supra; Lembke v. Unke, supra." 226 N.W.2d 648 (N.D.1975).

Having reviewed the record before us, we find when viewing the evidence in the light most favorable to the verdict that the jury could have found that under the adverse driving conditions presented by a slippery road surface after dark, Giese drove his automobile from behind a snowbank in such a manner that it could not be seen by Kresel, and that he drove his automobile at an angle to the designated lanes for travel and not in a proper traffic lane. The jury could properly have concluded from these facts that Giese operated his automobile in a negligent manner. We must find on the basis of the above that the jury had before it substantial evidence to sustain its verdict. We are therefore bound by that verdict and cannot substitute our judgment for that of the jury.

The second issue raised by Giese is whether the trial court erred in failing to grant his motion for a directed verdict on the ground that Kresel was guilty of contributory negligence. We have said in many cases, including Brauer v. James J. Igoe & Sons Construction, Inc., 186 N.W.2d 459, 463 (N.D.1971), from which we quote:

"Issues of negligence, proximate cause, and contributory negligence ordinarily are fact questions for the jury. Only when the evidence is such that reasonable men can draw but one conclusion do these become issues of law for the trial court. Gleson v. Thompson, 154 N.W.2d 780 (N.D.1967); Degenstein v. Ehrman, 145 N.W.2d 493 (N.D.1966).

"If fair minded men in the exercise of reason and judgment may draw different conclusions from the evidence, then the issues of negligence, proximate cause, and contributory negligence must be submitted to the jury. Lindenberg v. Folson, *supra* [138 N.W.2d 573 (N.D.1965)]; Schmitt v. Northern Improvement Co., 115 N.W.2d 713 (N.D.1962)." Brauer v. James J. Igoe & Sons Construction, Inc., 186 N.W.2d 459, 468 (N.D.1971).

■ We find upon reviewing the record before us that the evidence cannot be said to compel the singular conclusion that Kresel acted in a negligent manner, but find rather that reasonable men might draw from the evidence differing conclusions in response to the question of whether Kresel was negligent. Giese's contention that Kresel acted in an imprudent and negligent manner in failing to adjust his care and driving to the conditions existent at the time and place of the accident calls for a determination of whether Kresel's actions were those of a reasonable man. We held in Johnson v. American Motors Corp., 225 N.W.2d 57, 61 (N.D.1974), and reiterated in Waletzko v. Herdegen, *supra,* that:

"If there is a question whether one's conduct has met the standard of the reasonable man, whether one has acted reasonably or with due care, there is a question of fact to be determined by the jury."

Johnson v. American Motors Corp., 225 N.W.2d 57, 61 (N.D.1974).

As we cannot say as a matter of law that Kresel's actions constituted contributory negligence, the motion for a directed verdict was properly denied.

■ The third issue we must consider is whether the trial court erred in denying Giese's offer of proof regarding an explanation of the reason he admitted liability at the time of the accident.

The following exchange took place during the cross-examination of Kresel:

"Q. Now, after the accident, you stated that Mr. Giese told you that he was at fault, is that right?

"A. Yes.

"Q. Now you said those aren't his exact words. Could you tell the jury to the best of your recollection what his words were?

"A. He said it was—to the best of my ability he said it was his fault—or he said it was, 'My fault'. 'Come to my place, don't call the police and I'll pay for your damages'.

"Q. It appears that he wanted to settle the matter right then and there?

"A. Yes, he didn't want me to call the police.

"Q. Okay. Do you know why he told you that?

"MR. MOOSBRUGGER: Your Honor, may we approach the bench."

We quote in part from the subsequent discussion in chambers regarding the offer of proof:

"THE COURT: The Court will come to order. This is a hearing in chambers requested by Mr. Bohlman, one of the attorneys for the defendant. Mr. Moosbrugger is present.

"MR. BOHLMAN: Yes. Pursuant to Rule 43, the defendant would like to make an offer of proof for the following reasons: At the time that the plaintiff, Mr. Kresel, was testifying, I asked him the question of the exact nature of the conversations that were held between he and the defendant relative to the matter of the alleged admission of fault and I believe that the plaintiff would testify that the defendant stated that he had no

insurance and that he therefore wanted to pay or make a payment of the car damages to the plaintiff. The defendant would testify that the reason that he made any offer to pay for car damages was because he thought he would have to in view of the fact that he was not covered by liability insurance and so the reason for making any such statement was because of a mistake in law under which the defendant was operating and in effect would not be any admission of liability. * * *"

Giese asserts that any prejudice that might have resulted had the trial court allowed the reference to insurance is greatly outweighed by prejudice which arose as a result of his not being allowed to adequately explain his admission. We must disagree.

It is the established position of this court that disclosure of the fact that liability insurance is carried by a defendant is a matter considered so highly prejudicial as to require a mistrial or reversal. We said in Bischoff v. Koenig, 100 N.W.2d 159, 163 (N.D.1959), that:

"The rule is practically uniform in actions involving motor vehicle accident cases that where the defendant is protected by liability insurance, statements with reference thereto should not be made before the jury during the trial of the action. The general rule is stated in Blashfield Cyclopedia of Automobile Law, Permanent Edition, Vol. 9C, Sec. 6291, pages 472–474, 475 as follows:

'The general rule of almost uniform enforcement in motor vehicle accident cases is that the jury should not be informed of the fact that the defendant is protected by liability or indemnity insurance, either by the voir dire examination of jurors, the testimony of witnesses or statements of counsel during the trial, and it is the duty of the presiding judge to guard against prejudicial references to insurance. * * *

'Although there are exceptions, the general rule is that the placing of such information before the jury is prejudicial, and requires the declaration of a mistrial, or requires a reversal.'" 100 N.W.2d 159, 163 (N.D.1959).

That in this case the disclosure would have been to the effect that Giese was uninsured rather than insured, as in *Bischoff*, does not serve to diminish the prejudicial nature of the reference to insurance. Consistent herewith is our conclusion that the trial court did not unduly restrict the defendant in the trial of a tort case by prohibiting the defendant from inquiring of the plaintiff in the presence of the jury concerning insurance settlements. Regent Coop. Equity Exch. v. Johnston's Fuel Liners, 122 N.W.2d 151 at 155 (N.D.1963).

We hold, therefore, that the rule prohibiting references to liability insurance during the course of a trial extends to disclosure of the fact that the defendant is not covered by such insurance. We apply this holding here aware that there exist decisions in foreign jurisdictions wherein exceptions to the general rule prohibiting references to insurance have been recognized. We will, however, adopt here no exception to that rule which (under circumstances such as these and where the jury had before it no evidence incorrectly suggesting that the defendant was insured) would allow disclosure of the fact that Giese was uninsured.

Perhaps the most serious issue raised by Giese and the one upon which he has placed the most emphasis in his briefs and oral argument is issue number IV, wherein he contends that the court erred in admitting into evidence prior convictions not involving moral turpitude or felonies.

He concedes that in this State a person may be asked on cross-examination whether or not he has ever been convicted of a crime, including a misdemeanor, for the purpose of testing his credibility. He cites in support thereof State v. Fury, 53 N.D.

333, 205 N.W. 877 (1925), and Killmer v. Duchscherer, 72 N.W.2d 650 (N.D.1955).

He asserts that the convictions for which he was found guilty were not matters of moral turpitude or infamous crimes under the common law. He refers us to Section 39–16–03, N.D.C.C., which relates to abstracts of drivers' operating records and accident reports which may not be received as evidence. He points out that certain traffic violations may no longer be considered criminal offenses. See Chapter 39–06.1, N.D.C.C., effective July 1, 1973, and amended by Senate Bill No. 2041 in the Forty-fourth Legislative Assembly, effective July 1, 1975.

He asserts that for evidence to be admissible, there must be some logical connection between it and that which it tends to prove. In support of his argument that the trial court erred in admitting in evidence prior convictions not involving moral turpitude or felonies, he relies on State v. Schmidt, 72 N.D. 719, 10 N.W.2d 868 (1943), State v. King, 53 N.D. 95, 204 N.W. 969 (1925), State v. Phillips, 55 N.D. 269, 213 N.W. 355 (1927), Piechotta v. Fried, 46 N.D. 620, 181 N.W. 602 (1921), Haggard v. First National Bank of Mandan, 72 N.D. 434, 8 N.W.2d 5 (1942), State v. McCray, 99 N.W.2d 321 (N.D.1959), Thornburg v. Perleberg, 158 N.W.2d 188 (N.D.1968), and State v. Moe, 151 N.W.2d 310 (N.D.1967), as well as decisions of other States.

A pertinent part of his argument which includes the contended objectionable testimony follows:

"It is highly doubtful whether the statements and questions of the plaintiff's attorney were aimed at whether the defendant was a credible witness but were rather used to humiliate the defendant and cast prejudice upon him in front of the jury. The appropriate section of the trial transcript vividly depicts that that was exactly the intention of the plaintiff's attorney. At page 115, starting at line 17, the following exchange occurred:

'Q. Is it not a fact that on March 12, 1968, you were convicted of the crime of speeding?

'A. Yes, Sir.

'Q. Is it further not a fact that on March 30, 1969, you were convicted of the crime of failure to signal?

'A. Yes, Sir.

'Q. Is it also a fact that on March 30, 1969 . . . correct that, on November 23, 1969, you were convicted of speeding, 50 in a 30 zone. November 23, 1969?

'A. I don't remember.

'Q. Is you answer, you don't know?

'A. I don't remember.

'Q. You don't know whether you were convicted on that day or not?

'A. No.

'Q. For speeding 50 in a 30 zone, is that correct?

'A. Right.

'Q. Is it a fact that on November 23, 1969, you were convicted of the crime of displaying an altered license?

'A. Yes, Sir.

'Q. Also on that same day you don't recall whether or not you were convicted of speeding at the same incident?

'A. In relation, I do now, Yes.

'Q. A month later than that approximately on December 30, 1969, were you convicted of the crime of minor in possession?

'A. Yes, Sir.

'Q. And on July 15, 1970, were you convicted of speeding . . . 45 in a 25 zone?

'A. I don't remember.

'Q. You don't recall that on July 15, 1970, you were arrested and convicted of speeding . . . 45 in a 25 zone?

'A. No, I don't.

'Q. Do you say it didn't happen or you don't remember?

'A. I don't remember.

'Q. Have you had so many convictions for speeding offenses that you don't remember?'

"At this point counsel for the defendant objected and although the objection was sustained the damage had been done. Also the sustaining of the objection did not deter plaintiff's attorney from continuing his improper line of questioning. On page 201 of the transcript plaintiff's attorney was questioning the defendant on measurements he had made at the scene of the accident and took the opportunity to lead into the fact that Mr. Giese's drivers license was then under suspension:

'Q. 'You went out there what time yesterday to make these measurements?

'A. Around 5:30 or 6:00 o'clock.

'Q. And who did you go out there with?

'A. My mother.

'Q. Did you drive?

'A. No.

'Q. Why not?

'A. Because she had her car.

'Q. Because your license is under suspension, isn't that why?'

"At this point defendant's attorney again objected and moved for a mistrial. The motion was denied and the court instructed the jury to disregard the remarks of the plaintiff's attorney. But again the damage was done. The intent to prejudice the jury here is obvious. It is a breach of an attorney's ethics to pursue such line of questioning: American Bar Association, Code of Professional Responsibility, Disciplinary Rule 7–106(c)(2) p. 88 (1969) states that:

'In appearing in his professional capacity before a tribunal, a lawyer shall not (1) . . . (2) Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person'.

"Aside from the legal ethics of the situation, the remarks of plaintiff's attorney should have been grounds for mistrial. The prejudicial effect of allowing the past conviction for traffic violations to impeach credibility is that the jury will find against the defendant on the issue of negligence based upon his past record.

"This presents a particularly difficult situation in this case since this action by its very nature involves a consideration of the driving ability of both the plaintiff and the defendant. It is impossible for the jury to separate this particular action from the prior driving record—yet they must consider only this particular action in arriving at a determination of negligence. The potential difficulty in separating these incidents far outweighs any probative value as to credibility. * * * ''

What counsel in effect would have us do is establish a new rule in North Dakota which would prohibit questioning a witness as to traffic offense convictions for impeachment purposes. We are not convinced that we should adopt such a rule in this case. Because the convictions used for impeachment occurred prior to July 1, 1973, the effective date of Chapter 39–06.1, N.D. C.C., which decriminalized all traffic offenses except those referred to in Section 39–06.1–05, the traffic offenses involved in this case occurred when they were still considered crimes in this State.

Notwithstanding the argument made by counsel, it is our view that cross-examination as to convictions of misdemeanors for impeachment purposes was proper in this case.

In State v. Fury, 53 N.D. 333, 205 N.W. 877 (1925), a contention somewhat similar to that in the instant case was asserted by counsel. The specifics of that case, the contention, and the court's conclusion follow:

"During the course of the trial a witness who was called on behalf of the defendant was asked on cross-examination whether she had not been convicted of a violation of the prohibition law, and was not under suspended sentence on account of such conviction. To this question objection was interposed on the ground that the cross-examination was improper, and the inquiry incompetent, irrelevant, and immaterial. The objection was overruled, and the witness, being required to answer, did so in the affirmative. Defendant urges that the conviction, at most, was for a misdemeanor only, that it did not involve moral turpitude, and therefore the inquiry was improper. This court long ago adopted the liberal rule that a witness may be impeached on cross-examination by inquiries as to collateral facts tending to incriminate, disgrace, or degrade him. [Citations omitted.] The examination complained of was within the rule, and there was no error in the court's ruling."

■ Forty-two years later, in State v. Moe, 151 N.W.2d 310 (N.D.1967), we quoted with approval Syllabus ¶ 4 of *Fury*, which reads:

"A witness may be impeached on cross-examination by inquiries as to collateral facts tending to incriminate, disgrace, or degrade him, and, where such an inquiry is as to previous conviction on account of a criminal offense, it is not confined to conviction for felony."

State v. Fury, 53 N.D. 333, 205 N.W. 877 (1925).

In *Moe*, without making any exception in misdemeanor cases, we said:

"We are of the opinion that for the purpose of impeachment the most reasonable practice, and the one generally prevailing, minimizing prejudice and distraction, is that beyond the name of the crime, the time and place of conviction, and the punishment, further details may not be inquired into. McCormick, Evidence § 43, at 92–93 (1954). * * *"

State v. Moe, 151 N.W.2d 310, 320 (N.D. 1967).

Accordingly, we believe that the trial court properly applied the rule, and incidentally, without objection thereto, as it existed in North Dakota in permitting cross-examination of Moe as to previous traffic offense convictions for impeachment purposes.

■ We likewise find no error in the trial court's conduct relative to the first objection raised. It is to be noted that Giese had first failed to remember a speeding conviction and that he recalled it only after associating it with a conviction for having displayed an altered license. When he failed to remember another conviction for speeding, the question does not seem so objectionable. In any case, when the court sustained the objection, counsel failed to further pursue his remedy.

■ The second objection, relating to the question of whether he was riding with his mother when he visited the scene of the accident preparatory to trial rather than driving because his license was under suspension, is a more serious violation. Since the court sustained the objection and instructed the jury to disregard the remarks, we do not find it prejudicial, notwithstanding that the trial court denied the motion for new trial. As in the recent case of State v. Johnson, 231 N.W.2d 180 (N.D. 1975), we consider the error to be harmless under Rule 52(a), N.D.R.Crim.P., which reads:

"(a) Harmless Error.

Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Not as an excuse for the conduct of Kresel's counsel but so that we might have the case in proper perspective, we note that counsel for Giese later cross-examined Kresel relative to a number of traffic convictions. With that counter-balancing information before it of Kresel's traffic offense

convictions, it is unlikely that the jury was unduly impressed by Giese's similar record.

We conclude that issue number IV presents no basis for a new trial or for judgment notwithstanding the verdict. We render no opinion relative to a case in which Chapter 39–06.1, N.D.C.C., applies.

The fifth issue raised by Giese is whether the trial court improperly denied his motion for a mistrial. The following exchange is quoted from the record of plaintiff's closing argument:

"MR. MOOSBRUGGER: * * * Then according to his counsel, some time after that, after he had time to reflect, he withdrew any offer to settle. Why do you suppose he withdrew any offer to settle? Do you know why? Because he talked to Mr. Bohlman.

"MR. BOHLMAN: I'm going to object to that. There is absolutely no truth in that and that obviously would be speculation and I'll deny it right here and now and I move for a mistrial on that basis.

"THE COURT: Your objection is sustained and the motion is denied. Proceed, Mr. Moosbrugger."

■■■■ The question of whether by reason of the misconduct of counsel a new trial should be granted rests almost entirely in the discretion of the trial court and in the absence of a clear abuse of discretion, its decision on the question will not be reversed on appeal. See Hogan v. Knoop, 191 N.W.2d 263 (N.D.1971).

We said in Larson v. Meyer that:

"The granting of a mistrial is an extreme remedy and voids all proceedings taken in a case up to that time. The practice should be resorted to only when further proceedings would be productive of great hardship or manifest injustice. * * *" 135 N.W.2d 145, 159 (N.D. 1965).

See also Thornburg v. Perleberg, 158 N.W.2d 188 (N.D.1968).

■■■ Though we find counsel's statement improper and agree with Giese's contention that counsel may not introduce in his argument to the jury statements which are unsupported by the evidence, we cannot agree that the comment complained of here was prejudicial in light of the fact that counsel's remarks were provoked by opposing counsel's remarks which were to matters also outside of the record. We reach this conclusion in light of the curative nature of the court's instruction to the jury.

"INSTRUCTION NO. 23: STATEMENTS BY COUNSEL AND JUDGE

"An attorney is an officer of the Court. It is his duty to present evidence on behalf of his client, to make such objections as he deems proper, and to argue fully his client's cause. However, the argument or other remarks of an attorney, except admissions and stipulations noted in the course of the trial, are not to be considered as evidence in this case.

"If counsel or I have made any comments or statements concerning the evidence which you find are not warranted by the evidence, you should wholly disregard them and rely upon your own recollection or observation.

"If counsel have made any statements as to the law which are not warranted by these instructions, you should wholly disregard such statements."

Having considered the nature of counsel's statement to the jury, its probable effect on the jury in the context of the entire trial, and the court's instruction to the jury, we conclude that the trial court's denial of the motion for a mistrial did not constitute an abuse of discretion. We would do the jury an injustice and cast undeserved doubt on its place in our system were we to assume it could be so easily swayed from the path of justice.

■■■ The final issue before us is whether the evidence was insufficient to justify the verdict in that the award of damages was

excessive. As we said in discussing Giese's contention that the evidence was insufficient to justify the verdict in that the jury's finding of negligence was unsupported, we must, in determining the sufficiency of evidence to sustain a jury verdict, view the evidence in the light most favorable to that verdict and our review of the facts is limited to a consideration of whether there is substantial evidence to sustain the verdict.

We find on the basis of the record before this court that the jury could have found as a result of the automobile accident out of which this suit has arisen, that Kresel sustained a permanent partial disability of 10 percent of his cervical spine and 5 percent of his entire body, that he suffered numbness in his extremities when in a sitting or driving position, and experiences headaches when engaged in work requiring significant exertion.

As we said in Nitschke v. Barnick, 226 N.W.2d 785, 790 (N.D.1975), wherein we quoted from earlier cases, including Clark v. Josephson, 66 N.W.2d 539, 548 (N.D.1954):

"There is no fixed rule by which compensation for pain and suffering may be measured. Human suffering is not a commodity; it has no price, and therefore, it was left to the best judgment and sound discretion of the jury to determine compensation for the injuries sustained * * * and the pain and suffering arising therefrom. Each case must be determined upon its own peculiar facts. * *"

Nitschke v. Barnick, 226 N.W.2d 785, 790 (N.D.1975).

 It is Giese's contention that the disability rating was inherently unreliable. The credibility of witnesses and the weight to be given their testimony is, of course, a question of fact for the jury and whether or not this court might view the jury's finding with skepticism or absolute trust is not a question on appeal, as we must view the evidence in the light most favorable to the verdict.

We hold, therefore, that since substantial evidence existed to support the verdict, the jury's determination is properly left undisturbed.

In conclusion, it does not appear at all probable that anything upon which error has been predicated could have affected or did affect the verdict. The judgment and the order denying the motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict are accordingly affirmed.

PAULSON, VOGEL, PEDERSON and SAND, JJ., concur.